**Roger Neil WEINAR, an individual, Concept Search, Inc., a corporation, and National Gypsum Company, a corporation, Appellees,**

v.

**ROLLFORM INCORPORATED, a corporation, Appellant.**

**Roger Neil WEINAR, an individual, Concept Search, Inc., a corporation, and National Gypsum Company, a corporation, Cross-Appellants,**

v.

**ROLLFORM INCORPORATED, a corporation, and George C. Adams, an individual, Cross-Appellees.**

**Appeal Nos. 84–515, 84–526.**

United States Court of Appeals, Federal Circuit.

Sept. 17, 1984.

---

Douglas W. Sprinkle, Birmingham, Mich., argued for appellants. With him on the brief was Ernest I. Gifford, Birmingham, Ala.

Eric P. Schellin, Arlington, Va., argued for appellees. With him on the brief was Kenneth L. Warsh.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and KASHIWA, Circuit Judge.

MARKEY, Chief Judge.

Appeals from judgments entered on verdicts after denials of motions for judgment notwithstanding the verdict (JNOV). The United States District Court for the Eastern District of Michigan entered judgments on jury verdicts that U.S. Patent No. 3,308,590 (Ettore patent) is valid and not infringed, that U.S. Patent No. 4,117,644 ('644 patent) is valid and infringed, that U.S. Patent No. 4,221,095 ('095 patent) and U.S. Patent No. 4,296,580 ('580 patent) are invalid, and that plaintiffs Roger Neil Weinar, Concept Search, Inc. (Weinar) and National Gypsum Company (Gypsum) are each entitled to damages of $66,930. *We affirm in part and vacate in part.*

## BACKGROUND

### The Parties

Weinar is the patentee of the '644 patent (issued October 3, 1978), the '095 patent (issued September 9, 1980), and the '580 patent (issued October 27, 1981). The patents are directed to a wallboard fastener and a wall constructed with that fastener.

Weinar manufactures the fasteners. Concept Search, Inc. is assignee of the patents. Gypsum is sole distributor of Weinar's fasteners in the United States. Weinar sells half his fasteners to Gypsum and half to a Canadian distributor.

Rollform Incorporated (Rollform) manufactures and sells fasteners for wallboard. On November 29, 1978, Rollform obtained from Champion International Corporation (Champion) a license under the Ettore patent, which discloses a fastener similar to Weinar's and which issued years before his patent applications. Rollform purchased the Ettore patent on November 13, 1979.

From February, 1979 to June 1, 1980, Rollform made over two million of its "Type A" fasteners. From June 1, 1980 to present it has made its "Type B" fastener.

### The Invention

The Weinar fastener is a metal one-piece clip with pointed impaling flanges. An opening in the clip allows for securing it to wooden framing with a nail or screw. A walled depression strengthens the clip and spaces the wallboard from the frame.

The Weinar fastener is illustrated thus in the drawings of the '644 patent:

And thus in the identical drawings of the '095 and '580 patents:

Type "B"

*Patent and Trademark Office Proceedings*

On September 29, 1978, during pendancy of the application for the '644 patent, Weinar filed what he called a first continuation-in-part (CIP) application. He says he added no new matter, but filed it to permit extensive rewriting. When claims were rejected for double patenting and as obvious in view of Ettore, Weinar filed a terminal disclaimer, cancelled four claims, and added seven new claims. The CIP application issued September 9, 1980 as the '095 patent.

Weinar had filed a further CIP application on July 23, 1980, containing new matter. On September 8, 1980, Weinar filed a petition to make that application special in the Patent and Trademark Office (PTO), citing the present litigation. When the PTO rejected all claims for obviousness-type double-patenting and as obvious in view of Ettore, Weinar filed a terminal disclaimer, cancelled a claim, and added five claims. The application was issued October 27, 1981 as the '580 patent.

Rollform's type "A" and "B" fasteners are illustrated in the drawings introduced at trial:

The Ettore fastener is shown in these drawings from the Ettore patent:

Type "A"

Judkins patent No. 4,127,975 (Judkins) discloses a wallboard fastener having this configuration:

The Judkins patent was issued December 5, 1978 on a continuation of an application filed July 15, 1976; i.e., about 3½ months before the October 3, 1976 filing date of the application that resulted in the '644 patent. The Examiner who allowed the Judkins patent application examined the applications that issued as the '095 and '580 patents. He cited Judkins against the '095 but not against the '580 patent. Weinar called the examiner's attention to an advertisement of the Judkins fastener during prosecution of the '644 patent, saying he did not know whether it was prior art and was therefore not admitting that it was. Though Weinar later learned that the Judkins fastener did constitute prior art, he made no mention of it to the PTO.

### District Court Proceedings

Weinar sued Rollform on October 31, 1979, alleging infringement of the '644 patent. On January 9, 1980, Weinar amended his complaint, alleging unfair competition, saying Rollform's imitation of Weinar's advertising was an effort to pass its fasteners off as Weinar's.

Rollform answered on January 16, 1980, denying validity of the '644 patent for prior use, anticipation, obviousness, incomplete specification, indefinite claims, and lack of synergism. Rollform counterclaimed for infringement of its Ettore patent.

On February 22, 1980 Weinar answered the counterclaim, denying validity of the Ettore patent for incomplete specification and indefinite claims, denying enforceability because of misuse, and saying Ettore's claim wording precluded application of the doctrine of equivalents.

On June 1, 1980 Rollform ceased making its type "A" fasteners and began making and selling type "B" fasteners. Weinar conceded that type B does not infringe the '644 patent. Rollform conceded that if the '644 patent is valid, its type A infringes it.

On November 13, 1980, Weinar again moved to amend the complaint, alleging

direct, induced, and contributory infringement of his newly issued '095 patent. The motion was granted on January 9, 1981.

Rollform answered on February 23, 1981, alleging invalidity of the '095 patent for prior use, anticipation, obviousness, incomplete specification, indefinite claims, lack of synergism, and late claiming.

The '580 patent having issued on October 27, 1981, Weinar filed an additional complaint the next day alleging direct and induced infringement.

Rollform denied validity of the '580 patent on the grounds cited against the '095 patent plus double patenting and fraud on the PTO. Answering Rollform's counterclaim for infringement of the Ettore patent, Weinar said that patent was invalid for wrong inventors, anticipation, obviousness, incomplete specification, and indefinite claims, and was unenforceable because of misuse. He denied infringement.

Rollform included in its answers what it designated as counterclaims for invalidity of each of Weinar's three patents. It did not specifically seek a declaratory judgment of invalidity.

The district court consolidated Weinar's complaints on February 9, 1982.

Witnesses at a nine day trial were Weinar, Hauss, Adams, Krass and Ettore. Judkins and Sowinski testified by deposition.

Weinar described the making of his inventions, the patents, development of his advertising, Rollform's infringement, his discussions with Adams, his damages and lost profits, the prosecution of his applications, the relationship of Weinar and Gypsum, Gypsum's exclusive license, and unfair competition.

Hauss appeared as a patent law expert and employee of Gypsum. He testified on the patents, on infringement, on the scope of Weinar's claims, on validity and scope of the Ettore claims, on the relation between Weinar and Gypsum, on damages, and on unfair competition.

Adams testified on his work in development of the Rollform fasteners, discussions

with Weinar, Rollform's acquisition of the Ettore patent, and the organization and business operations of Rollform.

As an expert, Krass testified on the scope of the claims in issue, infringement, and validity of the patents.

Ettore testified on the design and development of the fasteners disclosed in the Ettore patent and in his earlier U.S. Patent 3,228,164.

Judkins was deposed on the design and development of the Judkins fastener and the background of his patent.

Sowinski was deposed on his evaluation of the Weinar and Judkins fasteners at Gypsum.

The court gave comprehensive and unchallenged instructions on the law to the jury. At one point in its deliberations, the jury requested and received clarification of the instructions on "late-claiming" and double-patenting.

The court employed a verdict form that required the jury to determine with respect to each patent whether it was "valid" or "invalid" and "infringed" or "not infringed", and to announce damages if appropriate.

As above indicated, the jury returned a verdict that the Ettore patent was valid and not infringed, the Weinar '644 patent was valid and infringed, and the Weinar '095 and '580 patents were invalid. The jury found damages for patent infringement in the amount of $66,930 each to Weinar and Gypsum, and $6,693 to Weinar for unfair competition.

Having previously moved for directed verdict, Rollform moved for JNOV and alternatively for a new trial. Weinar moved for JNOV. All motions were denied. Rollform appealed and Weinar cross-appealed.

*Issues*

1. Whether the district court erred in denying Rollform's motion for JNOV on the '644 patent.

2. Whether the district court abused its discretion in denying Rollform's alternative motion for a new trial.

3. Whether the district court erred in denying Weinar's motion for JNOV on the '095 and '580 patents.[1]

## OPINION

### General

The presentations of both sides in this appeal undergird the view that the "problem" seen by some in patent jury trials lies not in the jury system but in a failure of counsel to learn and follow long-established rules applicable at the trial and appellate levels.

■ Rollform asks us to remand for determination of infringement of the Ettore patent, alleging an erroneous instruction. Those issues, however, are not before us, Rollform having failed to designate that part of the judgment in its notice of appeal. FRAP 3(c).

■ Rollform argues for limitation of damages, asserting that Weinar introduced no evidence of marking under 35 U.S.C. § 287. Because Rollform did not raise the issue at trial, by request for an instruction or otherwise, it is improperly raised on appeal.

■ Weinar's brief in appeal No. 84–515 does not respond to Rollform's argument and authorities indicating that no support exists for the jury's award of $6,693 for unfair competition. The authorities cited by Rollform and uncontested by Weinar make it clear that the award is contrary to law when the evidence on which it was necessarily based is so insubstantial as that in the present record. That part of the judgment must therefore be vacated.

Weinar's brief in appeal No. 84–526 argues improperly for limitation of the inval-

idity verdict to the asserted claims, in disregard of Rollform's counterclaim for invalidity of the '095 and '580 patents, the evidence of invalidity of those patents presented to the jury, and Weinar's failure to object to the verdict forms and instructions. Fed.R.Civ.P. 51.

In appeal No. 84–526, Weinar asserts error in submitting issues of law to the jury, in disregard of its failure to object to that submission or to instructions on those issues, Fed.R.Civ.P. 51, and ignoring this court's contrary statement in *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 220 USPQ 929 (Fed.Cir.1984). Weinar says the jury's request for clarification of an instruction is alone sufficient to establish that it was confused when it later returned its verdict (a view that would preclude all such jury requests), again in disregard of its failure to object at the trial level.

Weinar repeatedly asserts that the trial court "could have" decided the validity of the '095 and '580 patents on the file wrapper and prior art as a matter of law, and that "in the interests of judicial economy" this court should do just that in appeal No. 84–526. In so arguing, Weinar misconstrues the role of this court on review following denial of a motion for JNOV. *Railroad Dynamics, supra.*

■ Weinar attacks the denial of increased damages under 35 U.S.C. § 284 on the ground that Rollform's counsel "testified" during his opening and closing statements. Weinar disregards: its failure to object to such "testimony" or to move for new trial on that ground; the consequent removal of the issue from those proper on appeal; and the curative instruction given by the trial judge, i.e., that counsel's statements do not constitute evidence. The rules make clear that absent plain error

1. The docket sheet does not indicate that Weinar had challenged the sufficiency of the evidence before the verdict was returned, by a motion for directed verdict or otherwise. Absent such challenge, Weinar's motion for JNOV would be improper and the relation of the evidence to the verdict in appeal No. 84–526 would

not be within our power to review. Fed.R. Civ.P. 50(b). On the presumption that the district court would not have entertained Weinar's motion if there had been no such challenge, and in view of Rollform's failure to raise the question, we consider issue 3.

lawyers who give the trial judge no opportunity to consider the propriety of an event at trial simply cannot ask an appellate court, sitting with but a cold record, to do so.

■ Weinar's argument in appeal No. 84–526 that the jury was confused, by testimony about "identaclaiming" and about the impropriety of successive CIP's with successively broadened claims, disregards the curative effect of the instructions to which Weinar raised no objection. It also disregards the "invited error" rule in that much of the testimony now objected to was elicited by Weinar's counsel on cross examination. Counsel did not move to strike any answer as nonresponsive and cannot now be heard to complain that the witness answered his questions.

Having disposed of the more inappropriate, unworthy, and wasteful arguments and assertions, we turn to those deserving of some discussion.

### Appeal No. 84–515

### (1) '644 Patent

While at one point recognizing the rules governing consideration of a motion for JNOV and review of a judgment following denial of that motion, Rollform nonetheless says we should reverse the judgment on the jury verdict that the '644 patent is valid because that verdict was contrary to the "clear weight of the evidence". That is not as stated the standard.

■ On presentation of a motion for JNOV that a patent is valid, (correctly, has not been proven invalid), the district court must first consider the fact evidence and draw reasonable inferences in a light most favorable to the non-moving party without determining credibility or substituting its choice for that of the jury when conflicting elements appear in the substantial probative fact evidence. *Railroad Dynamics, supra.* The moving party is entitled to JNOV when the court is convinced: (1) that reasonable persons could not in light of that evidence have found the facts necessary to support the jury's verdict; *or* (2)

that the facts properly found cannot in law support that verdict. If, on the other hand, the court is convinced that reasonable persons could have found in light of that evidence the facts necessary to support in law the jury's verdict, denial of the motion for JNOV is required. *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 220 USPQ 193 (Fed.Cir.1983).

Rollform says the factual basis for the jury's verdict is not clear because special fact interrogatories were not given to the jury. The subject of interrogatories is discussed more fully *infra.* At this point, it is sufficient to recognize that the role of interrogatories in making a judge's job easier (by illuminating a verdict's basis) has less place here. Contrary to Rollform's assertions, the question is not whether the district court or we would in the abstract consider that the invention claimed in the '644 patent would have been obvious, as though there had been no trial. The question before the district court and before us is whether the jury's verdict that the '644 patent is (remains) valid (i.e., has not been proven invalid in this case) is supported by substantial evidence. *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.,* 739 F.2d 604 (Fed.Cir.1984). Because the verdict was one of validity, the true question here is whether Rollform, which bore the burden, 35 U.S.C. § 282, submitted such evidence as would preclude a reasonable jury from reaching a verdict of validity.

Moreover, the rule is not that the fact basis for the verdict must be spelled out by the jury. It is sufficient if there be a basis for the verdict in the evidence. *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946).

Rollform offers an argument in the abstract that the '644 patent is invalid under 35 U.S.C. § 103, basing that argument on the disingenuous assertion that the Weinar fastener differs from that of Judkins only in the substitution of an elongated slot for a hole. If that had been the only evidence before the jury, and if Rollform's motion had been nonetheless denied, we would have had little difficulty in reversing the

denial of the motion. Indeed, as Rollform emphasizes, Weinar admitted that a slot for adjustability would have been obvious.

Rollform's argument not only fails to focus on the relevant inquiry, i.e., on the relationship of the evidence to the verdict, it also ignores the presumption of validity, 35 U.S.C. § 282 and the burden that statute places on Rollform. Rollform simply failed to prove facts showing obviousness of Weinar's walled depression and its performance of the two functions of strengthening the fastener and spacing the panel from the frame without digging into the frame or the panel. Proof that Judkins had seen the spacing problem would not prevent the jury from recognizing on the evidence presented that Weinar's solution was structurally distinct from Judkins and capable of performing two functions not achievable by the latter.

■ Rollform's briefs contain substantial argument of counsel praising the Judkins fastener, which Rollform does not make. Argument of counsel on appeal, however, cannot substitute for evidence. *Bio-Rad Labs, supra.* Because a reasonable jury could have determined that Rollform's evidence at trial was insufficient to carry its burden of establishing invalidity, the district court committed no error in denying Rollform's motion for judgment notwithstanding the verdict. *Railroad Dynamics, supra.*

### (2) *Damages Award to Gypsum*

Rollform made timely objection to the jury instruction authorizing an award of damages to Gypsum and moved for new trial. It thus preserved the issue for appeal. Rollform also argues, presumably under the umbrella of its motion for JNOV, that if the jury found Gypsum an exclusive licensee under the '644 patent, such a finding would be "against the clear weight of the" (correctly, "unsupported by substantial") evidence.

It is undisputed that Gypsum is the exclusive distributor throughout the entire territory in which the patent could have any legal effect, i.e., the United States. Rollform challenges the testimony describing Gypsum as having the "exclusive license to sell" the Weinar fastener in the United States, on the ground that Weinar's sales to Gypsum make the latter's sales non-exclusive. The argument is disingenuous. Taken seriously, it would preclude every exclusive license to sell not accompanied by a license to make and vice versa.

Rollform says that Gypsum cannot as a matter of law be awarded damages because it owns no part of the patent and because it is not "an exclusive licensee" (by which it means Gypsum does not have the exclusive right to make, use and sell), and because Gypsum's right, whatever it is, was not recorded as provided for in 35 U.S.C. § 261.[2] Rollform insists that rights in a patent are limited to ownership, exclusive licenses to make, use, and sell, and non-exclusive licenses. Because Weinar makes the fasteners and sells them to Gypsum in the U.S., and to its exclusive Canadian distributor in Canada, Rollform, as above indicated, says Gypsum could at best be only a non-exclusive licensee. It then cites cases dealing with split assignments and failure to join a licensee as plaintiff (*Waterman v. Mackenzie,* 138 U.S. 252, 11 S.Ct. 334, 31 L.Ed. 923 (1891)), with an attempt of a licensee to appeal alone (*Life Time Doors v. Walled Lake Door Co.,* 505 F.2d 1165, 184 USPQ 1 (6th Cir.1974)), and with an attempted simultaneous grant and

---

**2.** 35 U.S.C. § 261 reads in pertinent part:
Ownership; assignment
 Subject to the provisions of this title, patents shall have the attributes of personal property.
 Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

 \* \* \* \* \* \*

 An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.

reservation of the same rights to make, use, and sell (*Agrashell, Inc. v. Hammons Products Co.*, 352 F.2d 443, 447 USPQ 347 (8th Cir.1965)). Rollform inappropriately quotes snippets of language from opinions in those cases, though none of those cases is persuasive, each having involved a fact pattern jurisprudentially different from that in the present case.

Rollform cites *Western Electric Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 5 USPQ 105 (2d Cir.1930) and quotes at length that court's indication that "a bare license" gives no right to join in a suit. Gypsum is not, however, a bare licensee. Its right to sell is exclusive, like that of the licensees in *Western Electric*, who were held properly joined as plaintiffs because they were exclusive licensees in particular areas.

■■ The jury need not have determined that Gypsum was "an exclusive licensee" as defined by Rollform. It was at liberty to believe the testimony that an oral contract existed between Weinar and Gypsum, under which Gypsum had an exclusive right to sell as sole distributor in the United States. Rollform has shown nothing in the general contract law of the state in which the contract was formed (New York) to indicate that the contract was void or defective. Both parties to the contract sued Rollform for its acts of infringement that injured both. Multiple recoveries are neither recoverable nor here involved. Rollform argues that only a plaintiff may be awarded damages, apparently forgetting that Gypsum is a plaintiff and that Rollform never moved in the trial court for severance of Gypsum from the case.

■■ That the present fact pattern may be comparatively rare does not require a departure from the general rule that two parties sharing the property rights represented by a patent may have their respective rights protected by injunction and each, when properly joined in a suit, may be entitled to damages. *See Littlefield v. Perry*, 88 U.S. 205, 22 L.Ed. 577 (1874); *Paper-Bag Cases*, 105 U.S. 766, 26 L.Ed. 959 (1881); *Birdsell v. Shaliol*, 112 U.S. 485, 5 S.Ct. 244, 28 L.Ed. 768 (1884). *See*, also, *In re Precision Screen Machines, Inc.*, 729 F.2d 1428, 221 USPQ 1034 (Fed. Cir.1984) (Refusal to dismiss complaint of field of use license, patentee not joined, held not abuse of discretion warranting mandamus); *Wing Engineering Corp. v. U.S.*, 151 F.Supp. 314, 138 Ct.Cl. 260, 113 USPQ 343 (1957) (patentee's reservation will not preclude suit by licensee who attempted to join patentee); *Pratt & Whitney Co. v. U.S.*, 153 F.Supp. 409, 139 Ct.Cl. 540, 114 USPQ 246 (1951) (limited licensee may sue when patentee refuses to join after notice and invitation).

There being no dispute between Weinar and Gypsum, and no question of a *bona fide* purchase for value without notice of rights in the '644 patent, 35 U.S.C. § 261 is simply in this case inapplicable.

The district court committed no abuse of discretion in denying Rollform's alternative motion for a new trial.

### (3) *Damage Amount*

Rollform challenges the award of $66,930 each to Weinar and Gypsum as excessive because it totals more than the gross amount it received from its lower-price sales of the infringing type "A" fastener. The award equates to the profit of 3 cents per fastener lost by Weinar and by Gypsum. Rollform requests that we reduce the total damages from $133,860 to $3,474.75.

■■ In measuring damages "adequate to compensate for the infringement", 35 U.S.C. § 284, the infringer's failure to have made a profit from its infringement is irrelevant. The Supreme Court has defined such damages as compensation for the pecuniary loss suffered from the infringement "without regard to the question whether the defendant has gained or lost by his unlawful acts". *Coupe v. Royer*, 155 U.S. 565, 582, 15 S.Ct. 199, 206, 39 L.Ed. 263 (1895). The measure, when its calculation is possible, is an amount needed to return the patent owner to the position it would have occupied had there been no infringement. *Yale Lock Mfg. Co. v. Sar-*

*gent,* 117 U.S. 536, 552, 6 S.Ct. 934, 942, 29 L.Ed. 954 (1886).

Arguing that this court should reduce the damage award to what it says would be a reasonable royalty, Rollform says there was a failure to prove: (1) demand for the patented product; (2) absence of acceptable noninfringing substitutes; (3) capability of meeting demand; and (4) lost profit, as outlined in *Central Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 220 USPQ 490 (Fed.Cir.1983). There was, however, testimony interpretable by the jury as applicable to those elements, and those elements are not an absolute requirement in every case. *See Bio-Rad Labs, supra,* at 616; *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 219 USPQ 670 (Fed.Cir. 1983).

More importantly, the jury was instructed with respect to damages, and the only objection raised by Rollform related to awarding anything to Gypsum and to the possible effect on the jury that any instruction on increased damages may have. The remaining damages instructions were applicable to Rollform's claim for infringement of its Ettore patent as well as to Weinar's claim for infringement of the '644 patent. Having raised no objection before the jury retired, Rollform cannot now be heard to insist on our reducing the damages because the jury should have been instructed in a particular manner.

Jury damage awards, unless the product of passion and prejudice, are not easily overturned or modified on appeal. That salutary approach is particularly applicable here, where the jury had every right to believe the evidence presented to it respecting a proper damage award sufficient to compensate the plaintiffs for the injury each suffered.

### Appeal No. 84–526

#### Interrogatories

Like Rollform, Weinar attempts much from the election of the trial judge to forego submission of fact interrogatories to the jury. Weinar's plaintive cry that there is "no record" to show which findings or legal grounds formed the basis for the jury's verdict that the '095 and '580 patents are invalid, is of interest in view of its ready acceptance of the same jury's verdict that the '644 patent is valid. It is also wrong. The record is voluminous. That Rollform raised many defenses is of no moment, if there be one among them supported by substantial evidence on which a reasonable jury could have reached the challenged verdict. *Lavender v. Kurn, supra.*

Building on its "no record" theme, Weinar strenuously argues in appeal No. 84–515 that the district court committed "reversible error" when it declined to submit fact interrogatories to the jury and required verdicts of "valid or invalid" and "infringed or not infringed" for each patent. In appeal No. 84–515, Weinar says the failure to submit interrogatories was at most "harmless error" and makes no attack on the verdict form.

It should be recognized that a reversal, i.e., the substitution of a contrary judgment of this court for that entered by the district court, is not available to an appellant who merely establishes error in instructions or other procedures employed at trial. If such error was not "harmless", i.e., if it could have prejudicially affected the verdict, this court may order only that judgment be vacated and that a new trial be granted, for in that event, this court cannot say what verdict a jury would reach when properly instructed or when a proper procedure is followed. Where the procedural error was "harmless", i.e., where the evidence in support of the verdict is so overwhelming that the same verdict would necessarily be reached absent the error, or the error was cured by an instruction, a new trial would be mere waste and affirmance of the judgment is required. Thus it is difficult to conceive of a merely procedural error, as distinguished from an evidentiary insufficiency on the part of one who bore the burden, that could warrant an appellate court in reversing the appealed judgment entered on a jury verdict. *Rail-*

road Dynamics, supra, 727 F.2d at 1514, 220 USPQ at 937.

At trial, it was Rollform who requested the submission of interrogatories and it was Weinar who successfully objected to the submission. Indeed, the district court adopted the jury instructions proposed by Weinar. On at least two grounds, therefore, Weinar's argument is improper. First, if error had occurred, it would have been an "invited error" not subject to consideration on appeal. Second, Weinar's failure to object to the absence of interrogatories precludes the assignment of that absence as error here.

Recognizing its failure to request interrogatories, or to object to their absence, Weinar says its failure must be here disregarded because there has been an intervening change in the law and appellate courts must apply the law as it exists when the appeal is decided, absent manifest injustice. Weinar's difficulty is that the law has not changed.

Weinar's notion that the law on interrogatories was "changed" by this court in *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 220 USPQ 763 (Fed.Cir.1984), is wrong. Weinar's statement that this court "reversed a holding of invalidity for obviousness" because interrogatories were not used is untrue. This court in that case remanded because of erroneous instructions on the law of fraud and obviousness.

It is true that the court in *American Hoist* said the district court "should have" submitted interrogatories, but in view of the language of Fed.R.Civ.P. 49 ("a court *may* submit" [emphasis added]) it would improperly invade the right of a district judge to manage trials if an appellate court were to reverse in reliance on its own view that the rule should say *"shall submit"*. The role of an appellate court does not include modification of the Federal Rules of Procedure approved by the Supreme Court and mandated by the Congress, and this court in *American Hoist* attempted no such modification.

It is also true that in *American Hoist,* in *Railroad Dynamics, supra,* and in *Connell, supra,* this court noted an advantage accruing to judges on review of jury verdicts when those verdicts are accompanied by answers to fact inquiries. In *American Hoist,* this court noted earlier decisions of other circuits which, for some reason, saw that advantage as somehow more attractive in "a patent case". Given the same familiarity with the substantive law involved, however, the advantage to a reviewing judge is the same in any kind of case.

An appellate court should not vacate a judgment on a jury verdict solely because the trial judge declined to submit fact interrogatories to a jury. To do so would abrogate the discretion of the trial judge explicitly provided by Rule 49. To do so with respect to some but not other patent cases would confront the trial judge with a definitional quagmire.

Whatever advantage may accrue at the review stage, there are other stages in the judicial process, and submission of interrogatories is not in all cases an unmixed blessing. The decision to submit interrogatories, and the precise language in which they are couched, can have an untoward effect on a verdict, if certain elements of the trial or the evidence are thereby overly emphasized in the jury's mind. The potential for confusion and for conflict in answers to interrogatories and the verdict may be increased. The nature of the trial and the evidence, and the events at trial, may well influence the decision to employ or forego interrogatories.

The foregoing and other considerations reflect the wisdom of continuing to repose the question of submitting interrogatories within the sound discretion of the trial judge who is most familiar with all the courtroom circumstances existing at the time. With the knowledge of those circumstances fresh, and in expectation of a motion for JNOV and an appeal, trial judges can be trusted to employ interrogatories when it appears that the advantages of that step on review of the jury's verdict

outweigh the potential for untoward results outlined above.

### Evidence

Weinar makes the legitimate argument that its motion for JNOV should have been granted because there was not substantial evidence to support the jury's verdict that the '095 and '580 patents are invalid. The argument is legitimate but unavailing in light of the record.

 A verdict loser appealing denial of its motion for JNOV must, if it would prevail on appeal, show the absence from the record of substantial evidence to support each potential basis for the verdict. In the present case, where multiple defenses were presented to the jury, in company with physical and testimonial evidence without objection, that burden is heavy. Weinar has attempted to meet that burden by assailing each potential basis.

 A verdict winner, on the other hand, may sustain the verdict on a showing of substantial evidence establishing one controlling legal proposition upon which a reasonable jury could have reached that verdict. In the present appeal, Rollform argues that each of its defenses that reached trial (of the many listed in its shotgun-style answers to the complaints) was supported by such substantial evidence.

Though much of Weinar's argument treats the verdict on the '644 patent interchangeably with that on the '095 and '580 patents, the verdict and evidence reviewable in this appeal No. 84–526 must be considered in relation only to the latter patents, the claims of which are of broader than those of the '644 patent. Weinar concedes, as above indicated, that Rollform's type "B" fastener does not infringe the claims of the '644 patent, but asserts that it does infringe certain claims of the '095 and '580 patents. Prosecution in the PTO of the applications that matured into the latter patents involved events different from those in the prosecution of the application that matured into the '644 patent.

As above indicated, Weinar says there were no factual disputes concerning validity and that this court should therefore find the patents valid or invalid "based on the file wrappers and prior art as a matter of law". Interestingly, Weinar makes no such request in respect of the '644 patent. Nor did Weinar request the trial court to do that in respect of any of the patents, though it now says that the trial court "could have" done so in respect of the '095 and '580 patents.

The juxtaposition of Weinar's positions illustrates the impropriety of an appellate court's substituting the personal views of its judges for that of a jury when that jury has reached a verdict based on substantial evidence. Beyond creating an appearance of judicial arrogance, Weinar's suggested substitution would give those unsuccessful under the rules before a jury and a district judge the false feeling of entitlement to a *de novo* approach on appeal and a new chance to argue, this time in the abstract, that a patent is valid or invalid in light of the prosecution history and prior art.

Weinar's suggestion further illumines the justice achieved by even-handed application of the rules governing review of judgments entered after denials of motions for JNOV, for that even-handed application would be frustrated if the court met Weinar's desire that it follow the rules in appeal No. 84–515 but that it disregard the rules and substitute its naked view of obviousness in appeal No. 84–526.

The short answer to Weinar's argument lies in the evidence and testimony on numerous fact issues presented to and resolved by the jury, among them: Whether Weinar concealed the Judkins prior art from the PTO during prosecution of at least the '580 patent; whether the broad claims of the '095 and '580 patents were anticipated by Judkins; what was disclosed in the prior art as a whole, what differences, if any, exist between that disclosure and the structures broadly claimed in the '095 and '580 patents, what constituted the level of ordinary skill in the art, whether the invention filled a long felt need or was

a commercial success, inquiries the answers to which could form the basis for a conclusion that the inventions claimed in those patents would have been obvious. *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966). The jury was instructed on the legal issues of fraud and obviousness, Weinar made no objection to those instructions, and the law presumes that the jury followed the trial court's instructions. Under all of the circumstances and the record in this case, there is no foundation on which this court could rest a reversal of the denial of Weinar's motion for JNOV.

## CONCLUSION

Those parts of the judgment appealed from in appeal No. 84–515 and entered on the verdict that the '644 patent is valid and infringed, on the verdict that the Ettore patent is valid and not infringed, and awarding $66,930 each to Weinar and Gypsum are affirmed. The denial of Rollform's motion for a new trial is affirmed. That part of the judgment appealed from in appeal No. 84–515 and awarding $6,693 to Weinar for unfair competition is vacated. The judgment appealed from in appeal No. 84–526 is affirmed.

AFFIRMED IN PART—VACATED IN PART.

NICHOLS, Senior Circuit Judge, concurring.

I join in the judgment of the court, and in the Chief Judge's able opinion, except where it differs with what follows, *i.e.*, except to a very minor extent I have no doubt we are applying the law correctly and doing entire justice in the premises. My concern is only with what is said.

1. I do not join in the discussion of *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 220 USPQ 763 (Fed.Cir.), *cert. filed*, 52 U.S.L.W. 3862 (U.S. May 29, 1984). I read *American Hoist* as intimating more than the Chief Judge will allow. However, I do not find in it anything compelling a different result in the case before us than the one we have

reached, and specifically, I do not think it changes any former law. As its author is, unlike myself, an active judge of this court, I leave it to him to seek, if necessary, a resolution of any conflict there may be between what is *said* in *American Hoist* and what is attributed to *American Hoist* here. I add, I think it is futile for any court having the volume of business we have, to suppress all heresy in mere utterance, and to impose an iron uniformity upon all our verbiage. In *American Hoist,* the record was full of reversible error. Here it is not. That is the distinction meaningful to me.

2. Even if we had "supervisory power" I would not wish to see it exercised to impose special interrogatories on district judges who may not want them. The reasons to the contrary suggested by our Chief Judge herein, are persuasive to me.

3. So I am taking issue about what we say, not what we do, and my position here is contrary to my more usual view that talk is cheap and the mere words chosen by an intermediate appellate judge are of little consequence. I think we are painting ourselves into corners by our eagerness to pronounce legal doctrines not immediately necessary to make our decisions, and the more important our words are, the more confining will be the corners into which we have painted ourselves. I further think that our exclusive jurisdiction, over certain areas of law, is not to be construed as a legislative direction to ignore the efforts of other courts to deal with the same problems, efforts exerted when over many years they shared the responsibility that is now ours. Not only are such efforts not to be ignored, but sporadic notice of them, when it occurs, is not to take the form of selecting decisions that happen to agree with our thinking, without regard to their place in the development of the case law in that jurisdiction. "The life of the law is not logic but experience," and judicial experience is having to confront not just one case, but a series. As of right now, many other courts have had more continuous experience with patent validity issues than

we have, at least as one body. Congress decreed that their conclusions should not bind us, but surely it did not require us to ignore them. Every court except, apparently, this one, knows the difference between being *bound* by the decision of another court, and being *aided* by study of the efforts of that other court to solve problems we must solve, if the aid is given only by providing examples to avoid.