Ricoh v. Nashua Corp.                    CV-94-163-M    05/28/96 P

UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Ricoh Company, Ltd.; and
Ricoh Corporation,
      Plaintiffs,

            v.                                  Civil No. 94-163-M

Nashua Corporation,
      Defendant.


                            O R D E R


      Plaintiffs, Ricoh Company, Ltd. ("Ricoh Ltd.") and Ricoh

Corporation ("Ricoh Corp."), sued defendant, Nashua Corporation

("Nashua"), for infringing U.S. Patent No. 4,878,603 ("`603

Patent").  Midway through trial, plaintiffs moved, pursuant to

Federal Rules of Civil Procedure 15 and 21, to join their wholly-

owned subsidiary, Ricoh Electronics, Inc. ("REI"), as a plaintiff

in this action.  Plaintiffs wish to add REI in order to avoid

potential difficulties related to damages should Nashua be found

to have infringed plaintiffs' patent.  Nashua opposes plaintiffs'

motion.  For the reasons discussed below, plaintiffs' motion is

granted.

## I. DISCUSSION

Federal Rule of Civil Procedure 15 governs leave to amend pleadings: "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc. — the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962); see also Executive Leasing Corp. v. Banco Popular, 48 F.3d 66, 71 (1st Cir.), cert. denied, 116 S. Ct. 171 (1995); Kalman v. Berlyn Corp., 914 F.2d 1473, 1480 (Fed. Cir. 1990) (stating that law of regional circuit court governs standard for motion to amend).

The decision to grant or deny a motion for leave to amend lies within the discretion of the trial court. Benitez-Allende v. Alcan Aluminio do Brasil, S.A., 857 F.2d 26, 36 (1st Cir. 1988), cert. denied, 489 U.S. 1018 (1989). But because Rule 15 embodies a strong preference for deciding cases on the basis of

2

the evidence presented rather than on the form of pre-trial pleadings, "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." Id.

Despite this liberal amendment policy, Nashua advances two separate reasons why plaintiffs' motion should be denied. First, Nashua argues that REI would have no standing to assert any rights as a plaintiff if it were joined in this infringement action. Second, Nashua contends that it would be prejudiced by plaintiffs' delay if REI were joined as a plaintiff at this late date.

**A.    REI's Standing to Sue**

Nashua contends that REI does not have an exclusive license to manufacture the toner cartridge described in the `603 Patent and, as a result, lacks standing to sue for infringement. Plaintiffs counter that REI does, in fact, have an exclusive license to manufacture toner cartridges under the `603 Patent and does, by that very fact, have standing to sue as a co-plaintiff for infringement of the patent.

The Patent Act of 1952 provides that "a patentee shall have remedy by civil action for infringement of his patent." 35

U.S.C. § 281 (1984). As a general rule, then, a party suing for patent infringement must have held legal title to the patent at the time of infringement. Rite-Hite Corp. v. Kelly Co., 56 F.3d 1538, 1551 (Fed. Cir.), cert. denied, 116 S. Ct. 184 (1995); Ortho Pharm. Corp. v. Genetics Inst., Inc., 52 F.3d 1026, 1030 (Fed. Cir.), cert. denied, 116 S. Ct. 274 (1995). A party need not, however, hold all proprietary rights to a patent in order to have standing to sue for infringement as a co-plaintiff with the patentee. Ortho, 52 F.3d at 1031; Weinar v. Rollform Inc., 744 F.2d 797, 807 (Fed. Cir. 1984), cert. denied, 470 U.S. 1084 (1985).

For instance, "[u]nder certain circumstances, a licensee may possess sufficient interest in the patent to have standing to sue as a co-plaintiff with the patentee." Rite-Hite, 56 F.3d at 1552. Such a licensee is usually an "exclusive licensee." Id.; Ortho, 52 F.3d at 1032. In contrast, a non-exclusive licensee does not have standing to sue for infringement, even as a co-plaintiff. Ortho, 52 F.3d at 1032; Rite-Hite, 56 F.3d at 1552.

"To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention . . ., but also the patentee's express or implied promise that others shall be excluded from practicing the invention . . . ."

4

Rite-Hite, 56 F.3d at 1552 (emphasis added). "[I]t is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing, not simply that the word `exclusive' may or may not appear in the license." Ortho, 52 F.3d at 1032. Therefore, if a party has not received a promise of exclusivity under the patent, it cannot have co-plaintiff standing in an infringement action. Rite-Hite, 56 F.3d at 1552. It is important to stress, however, that the exclusive license need not be express; it may be implied. Id.; Kalman, 914 F.2d at 1481; Weinar, 744 F.2d at 807 (oral contract granting exclusive right to sell sufficient to confer co-plaintiff standing).

Here, plaintiffs have demonstrated that Ricoh Ltd., the owner of the `603 Patent, granted REI an implied exclusive license to manufacture the toner cartridge technology contained in the `603 Patent. The "Technical Assistance Contract" entered into by Ricoh Ltd. and REI clearly granted REI a license to practice the `603 Patent. Nashua Ex. 197. Although plaintiffs presented no direct evidence of the strictly exclusive nature of the license, all of the evidence presented at trial, taken together, strongly supports the inference that REI held an

5

exclusive right to manufacture the toner cartridges described in the `603 Patent, including the right to exclude others from doing so.

This conclusion is supported, first, by the corporate structures of and relationship among Ricoh Ltd., Ricoh Corp., and REI. Ricoh Ltd. is the parent company and owner of all Ricoh copier technology. Trial Tr., Day 3 (a.m.) at 89, 97. Ricoh Corp. is a wholly-owned subsidiary of Ricoh Ltd. and acts as its United States distributor. Trial Tr., Day 3 (p.m.) at 111. REI, in turn, is a wholly-owned subsidiary of Ricoh Corp. and functions as Ricoh Corp.'s manufacturing arm. Trial Tr., Day 3 (a.m.) at 89-90; Day 3 (p.m.) at 60. Therefore, while REI is a separate and distinct corporate entity, it is not a mere licensee; rather, it is a wholly-owned subsidiary that functions as plaintiffs' manufacturing arm. See Kalman, 914 F.2d at 1478, 1482 (finding nexus between patentee and his 50%-owned sole manufacturing licensee to be "so clearly defined" as to permit licensee co-plaintiff standing).

The exclusive character of the manufacturing license held by REI is demonstrated not only by the reality that Ricoh Ltd. effectively controls the manufacture of all products subject to the `603 Patent, but also by the fact that REI was and still is

the sole United States manufacturer of Ricoh copier supply products. REI manufactures nearly all of the copier toners and developers Ricoh Corp. sells and all of the Type 5000 and Type 670 cartridges involved in this suit. Trial Tr., Day 3 (a.m.) at 93. In addition, Ricoh Ltd. has never granted any party other than REI a commercial license under the `603 Patent. Trial Tr., Day 4 (a.m.) at 58. Of course, the fact that a party holds the only license granted by the patent owner would not, by itself, render that license "exclusive" for standing purposes. Rite-Hite, 56 F.3d at 1553. But the fact that REI is the only licensee under the `603 Patent and is subject to Ricoh Ltd.'s effective control over its use of that patent is persuasive evidence that the license granted REI was impliedly exclusive.

The combination of the Technical Assistance Contract, the corporate relationship among plaintiffs and REI, and the fact that REI is the sole manufacturer of the toner cartridges at issue in this infringement action is sufficient to demonstrate that REI holds an implied exclusive license to manufacture under the `603 Patent. As the exclusive copier supply manufacturing arm of Ricoh Corp., REI holds a sufficient number "of the proprietary sticks from the bundle of patent rights," Ortho, 52

7

F.3d at 1031, to confer co-plaintiff standing to sue for infringement of the `603 Patent.

**B.    Prejudice to Nashua**

Nashua next argues that it will be prejudiced by plaintiffs' delay in seeking to add REI as a plaintiff.  Plaintiffs filed their motion to amend on April 29, 1996, during the trial on the merits and well after formal discovery had closed.  Delay, standing alone, is usually an insufficient basis on which to deny leave to amend.  Greenberg v. Mynczywor, 667 F. Supp. 901, 905 (D.N.H. 1987) (citing Carter v. Supermarkets Gen'l Corp., 684 F.2d 187, 192 (1st Cir. 1982)).  However, "unseemly delay, in combination with other factors, may warrant denial of a suggested amendment."  Quaker State Oil Ref. v. Garrity Oil Co., 884 F.2d 1510, 1517 (1st Cir. 1989) (emphasis added).  Specifically, the "district court must consider prejudice to the opposing party."  Greenberg, 667 F. Supp. at 905.  Prejudice is present when the amendment would deprive the non-movant of the opportunity to present facts or evidence.  Bryn Mawr Hosp. v. Coatesville Elec. Supply Co., 776 F. Supp. 181, 186 (E.D. Pa. 1991) (citing Foman, 371 U.S. at 182).

Nashua maintains that it would be prejudiced by plaintiffs' proposed amendment because it did not obtain sufficient discovery of REI financial information before trial. As a result, the argument continues, Nashua's ability to rebut plaintiffs' damages case would be undermined by REI's late addition. Nashua does not argue, presumably because it cannot credibly do so, that it was unaware of REI and its role in the manufacture and sale of Ricoh toner cartridges. In fact, Nashua introduced into evidence the Technology Assistance Contract that constitutes the manufacturing license between REI and Ricoh Ltd. Nashua Ex. 197. Nashua has long been aware of REI's significant role in plaintiffs' business activities relative to the `603 Patent and its significance relative to damages calculations in this lawsuit; it cannot claim to be surprised by or unprepared for plaintiffs' motion to join REI as a plaintiff. This fact alone weighs strongly against a finding of prejudice. Ostano Commerzanstalt v. Telewide Sys., Inc., 880 F.2d 642, 646 (2d Cir. 1989) (amendment allowed when defendant was on notice that additional plaintiff was sublicensee of patentholder); Bott v. Four Star Corp., 229 U.S.P.Q. 241, 247 (E.D. Mich. 1985) (no prejudice found when defendant knew or should have known that additional plaintiff had a property

9

interest in the patents in suit), aff'd in relevant part, 807 F.2d 1567 (Fed. Cir. 1986).

The absence of prejudice to Nashua is also borne out by the information Nashua actually obtained from REI during discovery and by the evidence and expert analysis Nashua presented at trial. Nashua sought and obtained discovery of detailed REI cost and sales information prior to trial, including all of the financial information plaintiffs relied upon in presenting their damages case.[1] Prior to trial, Nashua also deposed Stephen Laky, one of plaintiffs' witnesses on the injury sustained by plaintiffs, through REI, as a result of Nashua's alleged infringement. Indeed, Nashua's own expert witness on damages, Creighton Hoffman, testified extensively at trial regarding the damages sustained, or not sustained, by REI. In short, throughout this case all parties have treated REI as if it were a party to the suit. Therefore, the addition of REI as a named plaintiff, even at this late stage, will not prejudice Nashua.

---

[1] Nashua at least implicitly suggests that other relevant material exists but was not produced by REI. During trial, however, plaintiffs repeatedly represented that REI produced all requested discoverable financial information in its possession relevant to damages. Further, Nashua argues that the information produced was woefully inadequate to prove the damages claimed by REI. Even if Nashua's argument proves correct, any deficiencies in Ricoh's damages case will certainly benefit, rather than prejudice, Nashua.

10

## II.  CONCLUSION

Because REI does have standing as a co-plaintiff, and because the addition of REI as a plaintiff in this action will not substantially prejudice Nashua, the court shall give effect to the liberal amendment policy embodied in Federal Rule of Civil Procedure 15.  Accordingly, plaintiffs' motion for leave to amend (document no. 76) is granted.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

May 28, 1996

cc:  Lawrence Friedman, Esq.
     David Herrington, Esq.
     Arthur Neustadt, Esq.
     Robert Pous, Esq.
     Joshua Rawson, Esq.
     Stephen E. Weyl, Esq.
     Robert R. Lucic, Esq.
     Ira B. Winkler, Esq.
     Bruce W. Felmly, Esq.
     Mark C. Rouvalis, Esq.
     Paul Buffum, Esq.
     Lisa Ferri, Esq.