Polyclad v. MacDermid                    CV-99-162-M    02/13/01

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Polyclad Laminates, Inc.,
and Fry Metals, Inc., d/b/a
PC Fab Division of Alpha Metals, Inc.,
    Plaintiffs

    v.                                        Civil No. 99-162-M
                                              Opinion No. 2001 DNH 027
MacDermid, Inc.,
    Defendant


**O R D E R**


        Polyclad Laminates, Inc. ("Polyclad") and Fry Metals, Inc.,

doing business as PC Fab Division of Alpha Metals, Inc.

("Alpha"), bring this patent infringement action against

MacDermid, Inc.  See 35 U.S.C. § 271, et seq.  Polyclad is the

exclusive licensee of United States Patent No. 5,800,859 (the

"'859 patent").  According to plaintiffs, Alpha is the only

organization licensed by Polyclad to manufacture and sell the

chemicals used in carrying out the patented processes.  It also

possesses the right, exercisable in its sole discretion, to

sublicense third parties to practice the patented processes.  See

Amended complaint at para. 6.

The '859 patent teaches a process for copper coating circuit boards, the first step in creating a printed circuit board. Part of that coating process involves the use of a surface active agent, or "surfactant." A substantial dispute in this case relates to the type of surfactant actually claimed in the patent and whether, as MacDermid asserts, plaintiffs knew, but failed to disclose to the United States Patent and Trademark Office (the "PTO"): (1) that only a process utilizing cationic (i.e., negatively charged) surfactants was novel over prior art; and/or (2) that the processes taught by the '859 patent actually require a cationic surfactant in order to function as claimed.

Plaintiffs say that MacDermid is infringing one or more claims of the '859 patent and is actively inducing others to infringe that patent. MacDermid denies that its conduct infringes the patent. Alternatively, it asserts that the '859 patent is invalid and unenforceable. MacDermid also raises two counterclaims. First, it seeks a judicial declaration that the '859 patent is invalid and unenforceable due to plaintiffs' alleged "inequitable conduct" before the PTO. Next, it brings a

2

claim for tortious interference with prospective and existing customers, based on plaintiffs' having informed MacDermid's customers of the alleged patent infringement.

Plaintiffs move for partial summary judgment with regard to MacDermid's counterclaims (as well as its third affirmative defense which, like its first counterclaim, relies upon plaintiffs' alleged inequitable conduct before the PTO). MacDermid objects and, in turn, moves for judgment of non-infringement as a matter of law. MacDermid also moves to dismiss Alpha as a party plaintiff, asserting that as a "non-exclusive licensee" of the '859 patent, Alpha lacks standing to sue for alleged infringement of that patent. See Fed. R. Civ. P. 12(b)(1).

## Standard of Review

I. Motion to Dismiss.

"When faced with a motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), Fed. R. Civ. P., the party asserting jurisdiction has the burden to establish by competent

3

proof that jurisdiction exists." Stone v. Dartmouth College, 682 F. Supp. 106, 107 (D.N.H. 1988) (citing O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982); C. Wright & A. Miller, 5 Federal Practice and Procedure § 1350, at 555 (1969 & Supp. 1987)). Furthermore, the court "may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987); see also Richmond, F & P R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). But, the court "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Richmond, 945 F.2d at 768 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citing Trentacosta v. Frontier Pacific Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987)).

4

II. <u>Summary Judgment</u>.

When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." <u>Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center</u>, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

**Discussion**

I. <u>MacDermid's Motion to Dismiss Alpha</u>.

According to the amended complaint, Polyclad is the exclusive licensee of the '859 patent and is vested with the right to enforce that patent and sue for all past infringements.

5

<u>See</u> Amended complaint, at para. 5.  Alpha, in turn, is alleged to be:

> a licensee of the '859 patent from Polyclad and has the right and license in the United States of America, its territories and dependencies, to manufacture, use, import and sell materials and processes relating to the claimed subject matter of the '859 Patent and the right, at its sole discretion, to sublicense rights under the '859 Patent.

Amended complaint, at para. 6.  Based upon those allegations and the record evidence, MacDermid claims that Alpha is merely a "bare licensee" of the '859 patent, without the right to sue for past infringement and, therefore, without standing to appear as a plaintiff in this litigation.  <u>See, e.g.</u>, <u>Textile Productions, Inc. v. Mead Corp.</u>, 134 F.3d 1481, 1484 (Fed. Cir. 1998) ("a bare licensee has no standing at all."); <u>Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.</u>, 52 F.3d 1026, 1034 (Fed. Cir. 1995) (holding that a "bare" or nonexclusive licensee has no standing to bring or join a suit for infringement).

The Patent Act of 1952 provides that "a patentee shall have remedy by civil action for infringement of his patent."  35

U.S.C. § 281.  Generally speaking, therefore, a party suing for patent infringement must have held legal title to the patent at the time of the alleged infringement.  See Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1551 (Fed. Cir. 1995); Ortho Pharmaceutical Corp, 52 F.3d at 1030.  As this court has observed, however, "[a] party need not . . . hold all proprietary rights to a patent in order to have standing to sue for infringement as a co-plaintiff with the patentee."  Ricoh Co., Ltd. v. Nashua Corp., 947 F. Supp. 21, 23 (D.N.H. 1996) (emphasis in original).

> For instance, under certain circumstances, a licensee may possess sufficient interest in the patent to have standing to sue as a co-plaintiff with the patentee. Such a licensee is usually an "exclusive licensee."  In contrast, a non-exclusive licensee does not have standing to sue for infringement, even as a co-plaintiff.

> To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention . . ., but also the patentee's express or implied promise that others shall be excluded from practicing the invention.  It is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing, not simply that the word "exclusive" may or may not appear in the license. Therefore, if a party has not received a promise of

7

> exclusivity under the patent, it cannot have co-plaintiff standing in an infringement action. It is important to stress, however, that the exclusive license need not be express; it may be implied.

Id., at 23-24 (citations and internal quotation marks omitted) (emphasis in original).

Here, plaintiffs assert that the allegations set forth in the amended complaint, taken together with the record evidence, establish that Alpha has been granted sufficient rights to the '859 patent to vest it with standing to proceed as a co-plaintiff in this litigation. The court agrees. Among other things, the amended complaint alleges that Alpha has the right, exercisable in its sole discretion, to sublicense rights under the '859 patent. Thus, Alpha plainly possesses, at a minimum, the patentee's implicit promise that others will be prevented from practicing the patented technology, absent Alpha's consent. See, e.g., Rite-Hite, 56 F.3d at 1552 ("To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall

8

be excluded from practicing the invention within that territory as well.").  See also Textile Productions, 134 F.3d at 1484.

Additional support for Alpha's assertion that it has standing as an "exclusive licensee" can be found in the record, including evidence of its intimate relationship with Polyclad and Cookson Group, PLC, the parent corporation of both companies. See, e.g., Affidavit of Mark Dingley, Exhibit 3 to plaintiffs' memorandum; Affidavit of Richard Mahoney, Exhibit 4 to plaintiffs' memorandum.  See generally Ricoh, 947 F. Supp. at 24; Kalman v. Beryln Corp., 914 F.2d 1473, 1482 (Fed. Cir. 1990). That evidence strongly supports plaintiffs' claim that, at a minimum, Alpha Fry, Ltd. (the assignee of the '859 patent), Polyclad (the exclusive licensee of the '859 patent), and Cookson Group, PLC (the parent corporation of all those entities) intended to vest Alpha with the right to practice the processes taught by the '859 patent and the right to preclude others from doing so (at least within the United States and its territories).

Alpha has, therefore, pled sufficient facts (and pointed to sufficient evidence in the record) to satisfy its burden under Rule 12(b)(1) and demonstrate that it has standing, as a co-plaintiff, to sue for alleged infringement of the '859 patent. Consequently, MacDermid's motion to dismiss is denied.

II. <u>MacDermid Counterclaims</u>.

A. <u>First Counterclaim - Inequitable Conduct</u>.

Applicants for patents and their agents are required to prosecute patent applications "with candor, good faith, and honesty." <u>Molins PLC v. Textron, Inc.</u>, 48 F.3d 1172, 1178 (Fed. Cir. 1995). <u>See also</u> 37 C.F.R. § 1.56 ("Rule 56") ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section."). "Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive."

10

Molins, 48 F.3d at 1178. Rule 56 defines "material information," subject to the disclosure requirement, as follows:

> Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
>
> > (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
> >
> > (2) It refutes, or is inconsistent with, a position the applicant takes in:
> >
> > > (i) Opposing an argument of unpatentability relied on by the Office; or
> > >
> > > (ii) Asserting an argument of patentability.

37 C.F.R. § 1.56.


Claim 1 of the '859 patent teaches "a process for treating a metal surface to promote adhesion thereto" and specifies the use of a surfactant to form "a microroughened conversion-coated surface." Claim 8, which is dependent upon claim 1, teaches a process "according to claim 1 in which the surfactant is a cationic surfactant." Although the patent describes the use of a

11

cationic surfactant as the "preferred embodiment" of the process described in the patent, claim 1 plainly teaches a process that utilizes surfactants that need not necessarily be cationic. That is to say, claim 1 teaches a process in which, at least theoretically, one might employ an anionic surfactant (i.e., one having a positive charge) or a nonionic surfactant (i.e., one carrying no charge).

The core of MacDermid's inequitable conduct claim is its assertion that, during the course of prosecuting their patent applications in Europe, plaintiffs (or, more accurately, their predecessors in interest) learned that: (1) use of a non-specified surfactant was taught by prior art; and, perhaps more importantly, (2) the processes taught in the '859 patent only worked when a cationic surfactant was used. In support of that argument, MacDermid points out that, in attempting to distinguish prior art, plaintiffs reported to the European Patent Office:

> In accordance with the process of the present invention a metal surface is treated in order to micro-roughen it and it is submitted that is exactly the opposite of the polishing step taught in the prior art Document. The micro-roughening treatment is obtained by incorporating

12

> into the adhesion promoting compositions as an
> essential ingredient a cationic surfactant. . . . [A]
> person skilled in the art would consider that if other
> surfactants were substituted for the surfactants taught
> in Document D1 a brilliant chemically polished surface
> would be obtained. Accordingly, it is submitted that
> Document D1 teaches exactly the opposite of the result
> required to be obtained by the process invention.

Letter to EPO dated November 27, 1996, Exhibit C to defendant's memorandum (emphasis supplied). And, in an effort to distinguish other prior art before the EPO, plaintiffs reported:

> Although the solutions of document D2 contain a
> corrosion inhibitor they do not contain a cationic
> surfactant and in the absence of a cationic
> surfactant/corrosion inhibitor combination the copper
> surface is not coated.

Letter to EPO dated May 15, 1998, Exhibit F to defendant's memorandum (emphasis supplied).

Ultimately, says MacDermid, plaintiffs were forced to limit the European patent's claims to cover only a coating process that employed a cationic surfactant. And, although MacDermid seems to acknowledge that plaintiffs brought all relevant prior art to the attention of the United States Patent Office, it says plaintiffs

13

were required (but failed) to disclose the results of testing that revealed that the process taught in claim 1 of the '859 patent would not work in the absence of a <u>cationic</u> surfactant.

At this stage of the litigation, (which, parenthetically, is prior to a <u>Markman</u> hearing and any determination of the scope of the '859 patent), the court is unable to definitively conclude, as a matter of law, that plaintiffs honored their obligations of full and candid disclosure to the PTO. If, as MacDermid asserts, plaintiffs knew that the process taught in the '859 patent could not be accomplished unless a cationic surfactant was used, and if plaintiffs failed to disclose to the PTO the results of their own testing revealing that fact, plaintiffs might well have violated their obligation of good faith and candor. Consequently, plaintiffs' motion for judgment as a matter of law as to MacDermid's first counterclaim (and its third affirmative defense) is necessarily denied, without prejudice.

14

B.    Second Counterclaim - Tortious Interference.

MacDermid says that it "developed and owns a chemical composition particularly useful in the production of multilayer printed circuits, covered by U.S. Patent No. 5,869,130 and marketed under the tradename MultiBond."  MacDermid's Answer and Counterclaim (document no. 29), at 7.  According to MacDermid, "MultiBond has no surfactant.  Nor is a surfactant recommended. MacDermid is not aware of any customer using a surfactant in its MultiBond product."  MacDermid's memorandum at 5.

MacDermid also asserts that plaintiffs "misrepresented to prospective and existing MultiBond customers that MacDermid's marketing of MultiBond was a violation of the Plaintiffs' patent applications and the '859 patent."  Id.  Additionally, it claims that plaintiffs knew that the '859 patent was necessarily "limited to an adhesion promotion process incorporating a cationic surfactant and did not cover processes utilizing other types of surfactants or no surfactant at all."  Id.  Thus, says MacDermid, plaintiffs tortiously interfered with their business relationships with customers and that unlawful conduct is

15

intimately intertwined with plaintiffs' inequitable conduct before the PTO (i.e., conduct that resulted in its allegedly wrongful receipt of an overly broad patent).

In response, plaintiffs rely on their denial of inequitable conduct before the PTO and, therefore, assert that MacDermid has failed to support an essential element of its tortious interference claim: that the patent holder was guilty of bad faith or fraudulent conduct before the PTO. See generally Zenith Electronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1355 (Fed. Cir. 1999) ("bad faith is a prerequisite to [plaintiff's] state-law tortious interference claim; without it, the claim is preempted by patent law."). See also Polyclad Laminates, Inc. v. MacDermid, No 99-162-M, slip op. at 1 (D.N.H. July 22, 1999). As noted above, however, the record is not sufficiently developed at this point to permit any conclusion, as a matter of law, as to whether plaintiffs did or did not engage in inequitable conduct before the PTO. Consequently, the court cannot conclude that MacDermid's second counterclaim fails to state a viable claim. That is to say, the record evidence does not establish that, as a

16

matter of law, MacDermid's second counterclaim is preempted by federal law.

III. MacDermid's Motion for Summary Judgment.

Finally, MacDermid moves the court to hold that, as a matter of law, it does not infringe the '859 patent "because its accused product, MultiBond, does not contain the 'surfactant' element required by all the claims of the '859 patent." MacDermid's motion for summary judgment (document no. 107) at 1. In response, plaintiffs point out that, in order to resolve MacDermid's motion, the court must first determine: (1) precisely what is meant by the term "surfactant," as used in the '859 patent; and, then, (2) whether MacDermid's allegedly infringing product actually employs a surfactant.

As noted above, the scope of the '859 patent has yet to be determined (the parties having only recently requested a Markman hearing). Because MacDermid's motion for summary judgment is essentially one for claim construction, it must necessarily be denied, without prejudice, pending the Markman hearing and the

17

court's legal construction of the scope of the '859 patent, and the meaning of the term "surfactant," as used in that patent.

## Conclusion

For the foregoing reasons, plaintiffs' motion for partial summary judgment (document no. 33) is denied, without prejudice. Defendant's motion for summary judgment (document no. 107) is likewise denied, without prejudice, as is defendant's motion to dismiss (document no. 101).

Finally, the following motions are denied as moot: plaintiff's motion to defer responding to defendant's motion for summary judgment (document no. 111); plaintiff's motion to extend time to respond to defendant's motion for summary judgment (document no. 114); and plaintiff's motion for leave to file a surreply to defendant's motion to dismiss (document no. 116).

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 13, 2001

18

cc: Howard J. Susser, Esq.
    Garry R. Lane, Esq.
    John M. Delehanty, Esq.
    James K. Robertson, Esq.
    Steven M. Gordon, Esq.
    Steven M. Bauer, Esq.