## PAPER–BAG CASES.

### PAPER-BAG MACHINE COMPANY *v.* NIXON.

### NIXON *v.* PAPER-BAG MACHINE COMPANY.

1. A party, having the absolute ownership of a patented machine, has the right either to use it during the extended term of the letters-patent, or to transfer such ownership and right to another.
2. A license for the exclusive use of such a machine within certain territory does not continue longer than the term of the original letters.
3. A licensee cannot, as such, sue for an infringement, but must assert his rights in the name of the original patentee.
4. Where the matter in controversy is merely the costs of suit, an appeal from the decree in which they were taxed will not be considered.

APPEALS from the Circuit Court of the United States for the Southern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. George Harding* and *Mr. John R. Bennett* for the Paper-Bag Machine Company.

*Mr. James Morse* and *Mr. E. W. Kittredge, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

On the 28th of April, 1857, a patent was granted to Charles H. Morgan and Benjamin R. Smith for an invention by Benjamin F. Rice of a "machine for making paper bags." This will hereafter be referred to as the Rice patent. By agreements entered into on the 11th of February and 12th of August, 1859, the owners of this patent executed to Martin Nixon, Thomas Nixon, and William H. Chatfield, partners, under the name of Nixon & Chatfield, a license for the exclusive use of the patented machines within certain territory, which included the States of Ohio and Indiana. Thomas Nixon, one of the licensees, is one of the parties to these appeals, and upon the dissolution of the firm of Nixon & Chatfield, in the year 1865, his interest in the license passed to and became vested in Chatfield & Woods. On the 6th of March, 1860, a reissue of this patent was granted to Charles H. Morgan, Leonard Whitney, Jr., and Thurston Priest. Some time about the year 1863, Francis H.

Morgan (a brother of Morgan, one of the patentees) became the owner of one of the machines covered by this patent, with an unrestricted license for its use. Morgan, the patentee, was for a time a joint owner of the machine with his brother, but he afterwards parted with his interest, and Francis H. Morgan became the sole owner. While there is no testimony in the case showing any instrument in writing by which the other patentees united in a license for the use of this machine, we are entirely satisfied that they gave their assent to what was done by Charles H. Morgan, and are in no condition to claim adversely to the license which he undertook to grant.

On the 17th of March, 1863, another patent was issued to Charles H. Morgan for an improvement in paper-bag machines. This will hereafter be referred to as the Morgan patent. Afterwards, Francis H. Morgan became the owner of two machines containing the improvements embraced in this patent, with an unrestricted license for their use. On the 26th of October, 1865, an exclusive license for the use in Philadelphia of machines embraced in both patents was granted to Francis H. Morgan, but there is no testimony showing that his rights in respect to the machines he already owned were confined to that territory, and there is no doubt but that he owned all the machines now in question long before this exclusive license was given.

On the 27th of November, 1865, which was after Thomas Nixon had retired from the firm of Nixon & Chatfield, and transferred all his interest in the exclusive license for the Rice patent to the other partners, Francis H. Morgan sold and conveyed to Thomas Nixon the two Morgan machines which he owned, and agreed to furnish on demand all other machines of like pattern and workmanship which Nixon might want. Nixon on his part bound himself not to use the machines he got in this way except within the States of Ohio and Indiana, and to pay the owner of the patent a royalty of three cents on every thousand bags made. He also agreed not to use any other machines in the manufacture of bags than such as he procured under this contract.

Afterwards, on the second day of November, 1866, Nixon wanted another machine, and called on Francis H. Morgan to

furnish it under his contract. Morgan having none of the Morgan machines on hand at the time, offered his Rice machine in the place of the one called for by the contract. This Nixon agreed to accept, if he could be released from his obligation not to use any other than Morgan machines within his territory. Morgan thereupon stipulated accordingly, and Nixon took the machine.

All these things were done by Francis H. Morgan with the full knowledge and consent of Charles H. Morgan, who was then the sole owner of his own patent and of a half-interest in that of Rice. An attempt was made to show the contrary of this, but the testimony leaves no doubt in our minds as to the fact.

Nixon took to Richmond, Indiana, all the machines he got from Francis H. Morgan, and either himself or through others carried on the manufacture of bags by their use. On the 21st of April, 1871, the Rice patent was extended for seven years, from April 28, 1871, on the application of Roxana Rice, the widow and executrix of the inventor. Mrs. Rice assigned the extended patent to the Union Paper-Bag Machine Company, and that company, on the 27th of June, 1871, granted to Chatfield & Woods the exclusive right to use in the States of Ohio and Indiana machines constructed under the patent. At the same time the company granted to the same parties the exclusive right of using within the same territory other machines covered by other patents which it owned, reserving a royalty of four cents on every thousand bags manufactured by any of the machines.

On the 17th of July, 1871, after this assignment, the Bag Company and Chatfield & Woods sued Thomas Nixon, Morris H. Nixon, and William Anderson, alleged to be doing business as partners under the name of Nixon & Company, to restrain them from using the Rice machine. The defendants answered, denying the alleged partnership, and averring that the business was carried on by Morris H. Nixon and William Anderson alone, they using the machine which belonged to Thomas Nixon and paying him a stipulated rent therefor. The suit was then discontinued as to Thomas Nixon, and from that time it was prosecuted alone against the other defendants. A new suit of

a similar character was, however, begun against Thomas Nixon, and the two were carried on together. In both the suits answers were filed, denying, in effect, the validity of the patent and the infringement; but on the 31st of May, 1873, decrees were entered in both cases, enjoining the defendants from using the machine, and ordering a reference to a master to state an account of profits and damages.

The accounting was continued before the master until the 14th of June, 1876, when Thomas Nixon paid to the Bag Company the sum of $7,543, and took a receipt therefor, as follows: —

"CINCINNATI, June 14, 1876.

"Received of Thomas Nixon the sum of seven thousand five hundred and forty-three dollars (7,543.00) money due under the contract of F. H. Morgan with Thomas Nixon, dated November 27th, 1865, and in full for the amount which the said Thomas Nixon reported to be due as royalties under said contract, May 10, 1876.

"$7,543.00.          UNION PAPER-BAG MACHINE CO.,

"By EDWIN J. HOWLETT, *Pres.*"

The hearing before the master was continued after this payment was made, and on the 23d of October, 1877, a report was filed, in which the master stated that the period covered by his inquiries was from June 27, 1871, the date of the exclusive license to Chatfield & Woods, to June 9, 1875, the date of the service of the injunction in the case. He also set forth the facts as to the contracts with Francis H. Morgan, and the payment of the royalties thereunder, substantially as they have already been given. He found that the number of bags manufactured by Nixon & Company between the dates above mentioned was 93,500,000, and that the royalty fixed by the Bag Company for the use of all its machines was four cents a thousand.

After the report was filed, the defendants in each of the cases asked and obtained leave to put in a supplemental answer, setting up the contract with Francis H. Morgan, and the payment to and acceptance by the Bag Company of the royalties due thereunder on the 14th of June, 1876. Upon the final hearing, after these answers were in, the court proceeded on the evidence to state the accounts, and decreed that Chatfield & Woods had no right on the pleadings and evidence to any

recovery. As to the Bag Company, it was found that it was the owner of the Rice patent; that it had an established license fee for the use of the several patents for improvements in paper-bag machinery, referred to in its licenses to Chatfield & Woods, and others, of four cents a thousand bags; that this license fee included the use of the Rice machine; that the Francis H. Morgan contract operated as a license to Nixon for the use of the Morgan machines, but not of the Rice machine; that 93,500,000 bags had been manufactured by Nixon & Anderson, by the use of all three of the machines; that they had already paid three cents a thousand on their royalty and must now pay one cent a thousand more, amounting in the aggregate to $935, for which a decree was entered against them. From this decree both parties have appealed; the Bag Company and Chatfield & Woods claiming that the defendants were liable to them, not for the license fee, but for the profits they made by the use of the Rice machine, and the defendants that the payment by Thomas Nixon of the royalty reserved under the Francis H. Morgan contract was a full satisfaction of all claims that could be made on them for the use of this machine, as well as those constructed under the Morgan patent.

In the suit against Thomas Nixon the same general conclusions were reached as in that against Morris Nixon and Anderson, but a decree for one cent damages only was rendered against him, because he only rented his machines to others to be used, and did not use them himself. From this decree, also, both parties appealed.

Upon the foregoing facts, the first question that presents itself is whether the use of the Rice machine was included in the royalty fixed by the contract of Francis H. Morgan with Thomas Nixon. If it was, then clearly, so far as the Bag Company is concerned, the acceptance of the stipulated royalty was a satisfaction of all claims for damages. This was substantially conceded on the argument.

The right of the owner of a patented machine, without any conditions attached to his ownership, to continue the use of his machine during an extended term of the patent, is well settled. *Bloomer* v. *McQuewan*, 14 How. 539; *Chaffee* v. *Boston*

*Belting Co.*, 22 id. 217; *Mitchell* v. *Hawley*, 16 Wall. 544; *Adams* v. *Burke*, 17 id. 453. Consequently Francis H. Morgan had, by his ownership of the Rice machine, the right to its use during the extended term of the patent. He could also sell it to others to be used in the same way. Power to sell the machine and transfer the accompanying right of use is an incident of unrestricted ownership. The contract of Morgan was to furnish Thomas Nixon with all the Morgan machines he wanted to use in the designated territory at the stipulated price and royalty. When called upon to furnish one of these machines under the contract he persuaded Nixon to take the Rice machine instead. Under these circumstances there cannot be a doubt that it was the intention of the parties to put the Rice machine in the place of a Morgan machine under the contract, and that whatever compensation was to be paid to the patentee for the use of the Morgan machine must be paid for the use of the Rice machine. It follows that, so far as the Bag Company is concerned, there should have been no decree against Nixon & Anderson. The payment of the royalty in June, 1876, was in full for the use of the Rice machine as well as the Morgan machines.

Next, as to Chatfield & Woods. Their exclusive right to the use of the Rice machine continued no longer than the term of the original patent. *Wilson* v. *Rousseau*, 4 How. 646. The Bag Company does not appear ever to have had any interest in the patent before the extension. Chatfield & Woods have never been anything else than licensees. As such they could not sue for an infringement. All their rights must be enforced through or in the name of the patentee. *Littlefield* v. *Perry*, 21 Wall. 205. Their recovery in this case, therefore, must be limited to their rights under the license from the Bag Company. Such was the understanding of the master, for he distinctly states in his report that his inquiries were confined to the period between the date of this license and the service of the injunction which stopped all further use of the machines.

Whatever may have been the effect of the first exclusive license held by Chatfield & Woods upon the right of Nixon to use his Rice machine in Indiana before the end of the original term of the patent, as that license ceased when the term

expired, it necessarily follows that during the extended term no questions can arise under that license. After the extended term began, that license did not stand in the way of the use by Nixon of his machine wherever he pleased, and the Bag Company took its title subject to his rights as an unrestricted owner, save in respect to royalties, of one of the patented machines. Chatfield & Woods took their license subject to the same rights in Nixon. They cannot claim as against Nixon more than the company could convey, and as Nixon was in legal effect operating his machine under a valid license superior to theirs, it follows that in this suit there can be no recovery in their behalf. Their remedy, if they have any, is against the company on their contract for the license, or to secure the benefit of the royalty.

From what has thus been said it appears that the decree in the suit against Nixon & Anderson, as far as it requires the payment of damages, was wrong. As the payment of the royalty was not made until long after the interlocutory decree sustaining the validity of the patent, and the supplementary answer setting up the special defence was not filed until after the report of the master was in, it was right to charge the costs against them.

So far as the appeal of Thomas Nixon is concerned, the controversy is really as to costs alone. The decree against him will consequently not be considered. *Canter* v. *American & Ocean Insurance Companies*, 3 Pet. 307; *Elastic Fabrics Co.* v. *Smith*, 100 U. S. 110.

The decree in the case against Nixon & Anderson will be reversed, with costs, and the cause remanded with instructions to enter a decree against the defendants for one dollar only and costs of suit. That in the suit against Thomas Nixon alone will be affirmed; each party to pay the costs of his own appeal; and it is

*So ordered.*

MR. JUSTICE MATTHEWS, MR. JUSTICE GRAY, and MR. JUSTICE BLATCHFORD did not sit in these cases, nor take any part in deciding them.