**WESTERN ELECTRIC CO., Inc., et al. v. PACENT REPRODUCER CORPORATION et al.**

No. 264.

Circuit Court of Appeals, Second Circuit.

May 5, 1930.

.Bill of complaint filed by three plaintiffs, the appellants here, charging defendants with infringement of patents. A motion to dismiss for misjoinder of parties was granted, with leave to the plaintiffs to amend within twenty days, and, no amendment having been filed within the time limited, a final order of dismissal was thereafter entered. Reversed.

The patents in suit are owned by the appellant American Telephone and Telegraph Company. It had granted to the other two appellants nonexclusive licenses (the exact terms of which are not set forth) within a special field of use, and thereafter, by an agreement dated May 7, 1929, it purported to convey to them additional rights by virtue of which they claim to be entitled to join as coplaintiffs with the patent owner in a suit to restrain infringement by the defendants within the special field. The "license agreement" of May 7, 1929, made part of the bill, reads, excluding recitals, as follows:

"Now, Therefore, in consideration of One Dollar and other good and valuable consideration, receipt of which is hereby acknowledged, and of the royalties heretofore paid and agreed to be paid under the aforesaid licenses, the American Telephone and Telegraph Company hereby confirms the aforesaid licenses to Western Electric Company, Incorporated, and Electrical Research Products, Inc., and does hereby assign and set over to said Western Electric Company, Incorporated, and Electrical Research Products, Inc., all the rights which it now has or may hereafter have under or arising from said patents or any of them (specifically including without excluding others each and all of the patents listed in said Schedule A) to exclude others from the manufacture, sale, lease, installation and/or use of apparatus, devices, systems or methods

"(1) for the recording of sound for the production of sound records:

"(a) for sale to the public as phonograph records, or

"(b) for use in connection with the exhibition of pictures, except in the home;

"(2) for the reproduction of sound from sound records:

"(a) as a public performance, or

"(b) in connection with the exhibition of pictures, except in the home;

and for the same consideration the American Telephone and Telegraph Company assigns and sets over to said Western Electric Company, Incorporated, and said Electrical Research Products, Inc., all claims recoverable in law or in equity, whether for damages, profits, savings, or of any other kind or description which the American Telephone and Telegraph Company now has or may hereafter have arising out of the infringement of the aforesaid patents within said field; the intention being that in so far as concerns the exclusion of infringers of said patents from the aforesaid field of business, Western Electric Company, Incorporated, and Electrical Research Products, Inc., shall be vested with as full rights in the premises as American Telephone and Telegraph Company would have had had this assignment not been made, including the right for their own benefit, to bring suit on said patents or any of them, either at law or in equity, against infringers in said field of business to exclude such infringers from practicing the inventions of

said patents, and for their own use and benefit to collect damages which may arise by reason of the future infringement of said patents by infringers within said field of business, but nothing herein contained shall in any way affect or alter the rights of American Telephone and Telegraph Company against others than infringers within the aforesaid field."

The infringements complained of are alleged to have occurred subsequent to the agreement of May 7th.

Charles Neave, of New York City (William R. Ballard, F. T. Woodward, and H. R. Ashton, all of New York City, of counsel), for appellants.

Kenyon & Kenyon, of New York City (Wm. Houston Kenyon, Theodore S. Kenyon, and W. Houston Kenyon, Jr., all of New York City, of counsel), for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above).

After dismissal of the previous appeal, reported in (C. C. A.) 37 F.(2d) 14, the District Court entered the final order of dismissal, which is now before us. The sole question presented is whether the two licensees should have been permitted to join as co-plaintiffs with the patent owner. The appellants rely upon Equity Rule 37 (28 US CA § 723, p. 20) and the acknowledged principle that an "exclusive licensee" is a proper party to join with the patent owner in an equity suit for infringement.

■ It is conceded that a bare license to practice a patented invention gives the licensee no right to join as plaintiff in a suit against an infringer. In its simplest form, a license means only leave to do a thing which the licensor would otherwise have a right to prevent. Such a license grants to the licensee merely a privilege that protects him from a claim of infringement by the owner of the patent monopoly. Heaton, etc., Co. v. Eureka Specialty Co. (C. C. A. 6) 77 F. 288, 290, 35 L. R. A. 728; De Forest, etc., Co. v. Radio Corp. (D. C. Del.) 9 F.(2d) 150, 151. He has no property interest in the monopoly of the patent, nor any contract with the patent owner that others shall not practice the invention. Hence the patent owner may freely license others, or may tolerate infringers, and in either case no right of the patent licensee is violated. Practice of the invention by others may indeed cause him pecuniary loss, but it does him no legal injury. Compare the analogous situation where the author of a copyrighted play grants a license to produce it, reserving moving picture rights, discussed in Tully v. Triangle Film Corp. (D. C. S. D. N. Y.) 229 F. 297, 298. Infringement of the patent can no more be a legal injury to a bare licensee than a trespass upon Blackacre could be an injury to one having a nonexclusive right of way across Blackacre. Therefore it is obvious that a bare licensee can neither sue alone, nor join with the patent owner, in an infringement suit. See Blair v. Lippincott Glass Co. (C. C. Ind.) 52 F. 226; Brookfield v. Novelty Glass Mfg. Co. (C. C. A. 1) 170 F. 960, 962; Heaton, etc., Co. v. Eureka Specialty Co., supra.

■■ But a license to practice the invention may be accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave. It is not disputed that an "exclusive licensee" has the right of joinder with the patent owner in an infringement suit. The dispute is as to the meaning of "exclusive licensee" within this rule. In Heap v. Hartley, 42 Ch. Div. 461, 470, Lord Justice Fry defined an exclusive license as "leave to do a thing, and a contract not to give leave to anybody else to do the same thing." A patent licensee having such a contract is obviously prejudiced by an infringement of the patent, for the patentee's sufferance of an unauthorized practice of an invention is as harmful to his promisee as would be the grant of a license in direct violation of the contract. To make effective such a contract, the licensee must have the right to compel the patentee to assert his monopoly for the benefit of his licensee; that is, the latter must have the right of joinder in a suit to restrain infringement, or of suing in the patentee's name if the patentee refuses to join in the litigation. In speaking of exclusive licenses in Independent Wireless Co. v. Radio Corp., 269 U. S. 459, at page 469, 46 S. Ct. 166, 170, 70 L. Ed. 357, Chief Justice Taft said:

"Such exclusive licenses frequently contain express covenants by the patent owner and licensor to sue infringers, that expressly cast upon the former the affirmative duty of initiating and bearing the expense of the litigation. But, without such express covenants, the implied obligation of the licensor to allow the use of his name is indispensable to the enjoyment by the licensee of the mo-

nopoly which by personal contract the licensor has given."

■■ If the licensee is granted not only leave to make, use, and vend the invention, but also the right to exclude from the licensed field every one else, including the patent owner himself, the grant may amount to an assignment of an interest in the patent, entitling the licensee (assignee) to sue an infringer in his own name; if it is less inclusive, it remains a license. Waterman v. Mackenzie, 138 U. S. 252, 256, 11 S. Ct. 334, 34 L. Ed. 923. In that event, the licensee may restrain an infringement only by joinder with the patent owner, or by use of the latter's name if he refuses to join as plaintiff and cannot be made a party defendant. Waterman v. Mackenzie, supra; Paper-Bag Machine Cases, 105 U. S. 766, 26 L. Ed. 959; Birdsell v. Shaliol, 112 U. S. 485, 5 S. Ct. 244, 28 L. Ed. 768; Independent Wireless Tel. Co. v. Radio Corp., 269 U. S. 459, 46 S. Ct. 166, 70 L. Ed. 357.

■ The definition of an exclusive license, quoted above from the English case, might be thought to imply that an "exclusive licensee" is a sole licensee. But we do not so understand it. A bare license might be outstanding in one when the patent owner grants a license to another accompanied by the promise that the grantor will give no further licenses. In such a case, the second licensee needs the protection of the right of joinder in a suit against infringers as much as though he were the sole licensee. We see no reason why he should not have it, and we think the authorities recognize his right. See Radio Corp. v. Emerson (C. C. A. 2) 296 F. 51, where there were apparently outstanding nonexclusive license rights in the De Forest Company; Gayler v. Wilder, 10 How. 481, 13 L. Ed. 504, where the patentee retained the privilege of practicing the invention within the licensed territory, paying the licensee a royalty. Nor do the defendants challenge this view, if we correctly understand their position, for their brief asserts that the distinguishing characteristic of an exclusive license is a promise, express or implied, by the licensor, that he will not thereafter license others. The real issue between the parties is whether the agreement of May 7th contains such a promise, the appellants asserting, and the appellees denying, that it does. To that issue we shall now direct attention.

■ Both parties concede that the agreement contains nothing to prevent prior licensees of the grantor if there be any, from practicing the invention. Possibly also the grantor itself may do so, for it is not clear that the words of the grant, "all the rights which it now has or may hereafter have (under the patents) to exclude others," would include the patent owner's privilege of using the invention itself. But we cannot doubt that such a grant precludes the patent owner from thereafter granting new licenses to others. It has "assigned" all its existing rights to exclude from the patent monopoly in the specified field, and only one having the right to exclude can grant a license to enjoy. It is urged by the defendants that the attempted assignment is only an assignment of remedies against infringers and is inoperative to convey any "title" or "interest" in the patents; reliance being placed upon Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U. S. 24, 43 S. Ct. 254, 67 L. Ed. 516, as authority for this assertion. Let it be assumed that no "title" or "interest" in the patent is transferred even when the grantee of the right to exclude enjoys a license under the patent, which he did not in the Crown Case, nevertheless the attempted assignment must surely import an implied promise by the grantor to do nothing to defeat the rights that he purports to convey. The granting of new licenses ad libitum would completely defeat the rights of exclusion that he has purported to transfer for a consideration to his grantee. Hence an obligation that the grantor will not thereafter grant any similar license is, we think, clearly to be implied. But the defendants contend that the final portion of the agreement reciting the "intention" of the instrument shows that the grantor meant to retain the power to give additional licenses. Reliance is placed upon the limitation of the assigned rights to rights against "infringers," and on the concluding recital that "nothing herein contained shall in any way affect or alter the rights" of the grantor "against others than infringers within the aforesaid field." The defendants' construction of the language of the "intention" clause seems to us completely to destroy the granting clause, both as an assignment of the grantor's rights to exclude and as an implied covenant to grant no similar license to others. The instrument must be interpreted, if possible, so as to give meaning to all its terms. We think this is possible. The reservation of the grantor's rights "against others than infringers within the aforesaid field" may refer, not only to its rights against infringers in other fields, but also to its rights against prior licensees, if such there be, within the limited field, and to rights

against those who may commit a tort other than infringement, such as slander of title of the patents. To reserve the power to grant licenses by such a phrase as "rights against others than infringers" puts a strained construction upon the phrase. It should not be adopted when the result would be to contradict the granting portion of the agreement.

The question, therefore, is whether a license agreement which reserves to the licensor, and to possible prior licensees, the privilege of practicing the invention, but contains an implied promise that the licensor will give no further license within the specified field of use, entitles the promisees to join with the licensor in an infringement suit. Under the principles already discussed, we think it does. They are as directly prejudiced by an infringement as they would be if sole licensees, and under the assignment they are beneficially interested in the fruits of any recovery in the suit. Upon recognized principles of equity, they should be permitted to join as coplaintiffs with the patent owner. See Goodyear v. Allyn, Fed. Cas. No. 5,555; Radio Corp. v. Emerson (C. C. A. 2) 296 F. 51; Gayler v. Wilder, 10 How. 481, 13 L. Ed. 504; Robinson, Patents, § 1099.

The authorities chiefly relied upon as sustaining the opposite view are Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U. S. 24, 43 S. Ct. 254, 67 L. Ed. 516, and Radio Corp. v. Hohenstein (C. C. A. 2) 289 F. 757. These cases involved contracts somewhat similar to that in the case at bar, but in each the assignee was asserting that the agreement gave it the right to sue alone. In the Crown Case the plaintiff had no license to make, sell, and use; it was merely assignee of the patentee's right that a particular corporation, the defendant, should not infringe. The court held that this was not an assignment under Rev. St. § 4898 (35 USCA § 47); hence the plaintiff could not sue in its own name. In the Hohenstein Case, the plaintiff evidently had some sort of license in addition to the assignment of the patentee's rights against a particular infringer; but the Wireless Case was considered a controlling authority. These decisions have no direct bearing upon the question of joinder before us. Indeed, in each of the opinions there is language which may be read as implying that the plaintiff might have maintained its suit by joining the patentee. Whether or not it could have done so, we need not say. In the suit at bar, the rights of the licensees, both in respect to the license and in respect to the assignment of rights to exclude infringers, are more comprehensive; and, for reasons already stated, we hold them entitled to join with the patent owner in a suit for infringement.

The decree of dismissal is reversed, and the cause remanded.