# United States Court of Appeals for the Federal Circuit

---

**MOLON MOTOR AND COIL CORPORATION,**
*Plaintiff-Appellant*

**v.**

**NIDEC MOTOR CORPORATION,**
*Defendant-Appellee*

---

2019-1071

---

Appeal from the United States District Court for the Northern District of Illinois in No. 1:16-cv-03545, Judge Edmond E. Chang.

---

Decided: January 10, 2020

---

RAYMOND P. NIRO, JR., Niro McAndrews LLC, Chicago, IL, argued for plaintiff-appellant. Also represented by KYLE WALLENBERG.

RUDOLPH A. TELSCHER, JR., Husch Blackwell LLP, St. Louis, MO, argued for defendant-appellee. Also represented by KARA RENEE FUSSNER, STEVEN E. HOLTSHOUSER, BRENDAN G. MCDERMOTT.

---

Before LOURIE, REYNA, and HUGHES, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* LOURIE.

Dissenting opinion filed by *Circuit Judge* REYNA.

LOURIE, *Circuit Judge*.

Molon Motor and Coil Corporation ("Molon") appeals from the judgment of the U.S. District Court for the Northern District of Illinois in favor of Nidec Motor Corporation ("Nidec") on Molon's claim for infringement of U.S. Patent 6,465,915 ("the '915 patent"). The district court granted summary judgment that Molon is barred from enforcing the '915 patent against Nidec pursuant to a covenant not to sue that Molon granted in 2006 ("the 2006 Covenant"). Molon argues that the 2006 Covenant was extinguished by a clause in a Settlement, License and Release Agreement that the parties entered into in 2007 ("the 2007 Settlement"). The clause at issue in the 2007 Settlement states that all prior covenants "concerning the subject matter hereof" are "merged" and "of no further force or effect." Because we agree with the district court that the two agreements concern different subject matter and therefore do not merge, we affirm.

## BACKGROUND

Molon and Nidec are competitors in the electric motor market. In 2004, Molon filed suit in the Northern District of Illinois against Nidec's predecessor, Merkle-Korff Industries, Inc. ("Merkle-Korff"), for infringement of U.S. Patent 6,054,785 ("the '785 patent"). J.A. 76–78 ("the '5134 litigation"). Merkle-Korff filed counterclaims, including for declaratory judgment of noninfringement, invalidity, and unenforceability with respect to two other patents owned by Molon—the '915 patent and U.S. Patent 6,617,726 ("the '726 patent"). J.A. 90–100. Molon moved to dismiss Merkle-Korff's counterclaims involving the '915 and '716 patents, and Merkle-Korff opposed the motion. On February 2, 2006, Molon unilaterally provided Merkle-Korff with the 2006 Covenant, which states:

> Molon hereby forever covenants not to sue Merkle-Korff for patent infringement (whether direct, contributory, or by inducement thereof) under either the '915 patent or the '726 patent with respect to any and all products previously or presently made, used or sold by Merkle-Korff in the United States. This covenant extends directly to Merkle-Korff as well as any individual or entity to which Merkle-Korff previously or presently supplies products by way of the manufacture and/or sale thereof in the United States.

J.A. 27. Molon then represented to the court that "[t]his covenant divests the Court of subject matter jurisdiction over Merkle-Korff's declaratory judgment counterclaims involving the '915 and the '726 patents, and such claims must accordingly be dismissed." J.A. 28. After dismissal of those counterclaims, the '5134 litigation continued with respect to only the '785 patent.

In early 2007, Molon and Merkle-Korff entered into the 2007 Settlement, after which the parties jointly filed a stipulation of dismissal in the '5134 litigation. J.A. 30–37. In the 2007 Settlement, Merkle-Korff agreed to pay Molon a lump sum payment in exchange for an exclusive license to more than a dozen of Molon's United States and foreign patents and patent applications—including the '785, '915, and '726 patents—within a narrowly defined exclusive market:

> Grant. Molon hereby grants each of the Merkle-Korff Affiliates an exclusive, fully paid-up, royalty free, worldwide, perpetual, irrevocable, retroactive, current and future right and license of all Patent Rights to make, have made, use, sell, offer to sell, lease, import, export, or otherwise commercialize products and/or systems for resale or other transfer: (i) to any of the other Merkle-Korff Affiliates; and/or (ii) to [a third-party company and its

affiliates] (such persons and entities in (i) and (ii) above, collectively the "Kinetek Exclusive Market"). Under said license, the sale, offer to sell, lease, importation, exportation, commercialization and/or other transfer of products and/or systems between two Merkle-Korff Affiliates (as expressly set forth in (i) above), shall in no way permit the transferee Merkle-Korff Affiliate (i.e., the receiving Merkle-Korff Affiliate) to make, have made, use, sell, offer to sell, lease, import, export, or otherwise commercialize such products and/or systems for resale or other transfer to any person or entity outside of the Kinetek Exclusive Market.

JA 31. In addition to the exclusive license rights within the Kinetek Exclusive Market, the 2007 Settlement granted Merkle-Korff in certain instances "the right, but not the duty, to pursue an infringement claim"—i.e., the right to exclude others from using the patents within the Kinetek Exclusive Market. J.A. 32.

The 2007 Settlement contains a "merger" or "integration" clause[1]:

Entire Agreement. This Agreement is an integrated Agreement and constitutes the entire agreement and understanding between and among the Parties with regard to the matters set forth herein and shall be binding upon and inure to the benefit of the administrators, agents, personal representatives, successors, and assigns of each. There are no

---

[1]    The terms "merger clause" and "integration clause" may be used interchangeably to describe a clause in a written contract that states that there are no representations, promises, or agreements between the parties except those found in the written contract. *See* Restatement (Second) of Contracts § 216 cmt. e (1981).

> representations, promises, or agreements pertaining to the terms or subject matter of this Agreement, whether express or implied, that are not set forth in this Agreement. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations and covenants concerning the subject matter hereof, are merged herein and shall be of no further force or effect.

J.A. 35. The 2007 Settlement also expresses the parties' agreement that they cooperated in drafting the agreement, it is not to be interpreted for or against either of them, and it is to be governed by the laws of the State of Illinois. J.A. 34–35.

Merkle-Korff later merged with Nidec. Whether that merger immunizes Nidec from liability that it might have otherwise had prior to the merger raises the issue that is at the heart of this appeal. In the present suit Molon alleges that Nidec is practicing and/or inducing others to practice the '915 patent outside the licensed Kinetek Exclusive Market. *See* J.A. 58–64.

Nidec moved for partial summary judgment on Molon's infringement claim, arguing that Molon is barred from enforcing the '915 patent against Nidec under the 2006 Covenant. Molon responded that the 2006 Covenant was extinguished by the merger clause in the 2007 Settlement. Applying Illinois contract law, the district court granted partial summary judgment in favor of Nidec on Molon's claim for infringement of the '915 patent. J.A. 1–12. Because the merger clause in the 2007 Settlement pertains only to covenants "concerning the subject matter hereof," the court compared the subject matter of the 2006 Covenant to the subject matter of the 2007 Settlement. The court found that the 2006 Covenant gives Nidec a right to avoid suit for patent infringement on two patents, one of which is the '915 patent. J.A 9. In contrast, the 2007 Settlement is in some ways broader—it is an exclusive license,

it includes more than a dozen patents and applications, and it provides Nidec with some enforcement rights—and in other ways narrower—it is limited to a defined market of customers—than the 2006 Covenant. J.A. 9. Thus, the court concluded, the 2006 Covenant remains in effect because it does not concern the same subject matter as the 2007 Settlement.

After granting Nidec's motion for partial summary judgment, the Court entered final judgment on Molon's patent infringement claim pursuant to Federal Rule of Civil Procedure 54(b). Molon appealed the court's judgment. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of summary judgment according to the law of the regional circuit. *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1303 (Fed. Cir. 2015) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1377 (Fed. Cir. 2014)). In the Seventh Circuit, a grant of summary judgment is reviewed *de novo*. *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 359 (7th Cir. 2011). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

In this case, the question before us is whether the 2007 Settlement should be interpreted to have revoked or extinguished the 2006 Covenant. Contract interpretation is a question of state law. *See Volt Info. Sci., Inc. v. Bd. Of Tr. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989). The 2007 Settlement contains a choice-of-law provision requiring that it "be governed and construed in accordance with the laws of the State of Illinois as to all matters of interpretation and remedy." J.A. 35. Therefore, we apply Illinois state law to interpret the 2007 Settlement *de novo*. *Erlenbush v. Largent*, 819 N.E.2d 1186, 1189 (Ill.

App. Ct. 2012) ("[W]e interpret the contract independently, without deference to the trial court.").

Traditional contract interpretation principles in Illinois require application of the "four corners" rule. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999). In applying this rule, "[a] court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007); *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984) ("Where a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids.").

We must therefore look to the language of the 2007 Settlement. The merger clause states in relevant part:

> All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations and *covenants concerning the subject matter hereof, are merged herein and shall be of no further force or effect.*

J.A. 35 (emphasis added). The parties have not argued that the merger clause is ambiguous or that it requires extrinsic evidence to interpret what the parties intended. The clause, on its face, only pertains to covenants "concerning the subject matter" of the 2007 Settlement.

Molon argues that the language of this clause in the 2007 Settlement expressly extinguished the 2006 Covenant because the two agreements concern the same subject matter. Intermingled with that argument, Molon also suggests more generally that the existence of the merger clause within the 2007 Settlement is itself evidence of the

parties' intent to extinguish the 2006 Covenant.  We address these arguments below.

I

We first address the language of the merger clause in the 2007 Settlement, which limits its application to covenants "concerning the subject matter hereof."  We consider whether the subject matter of the 2006 Covenant and the 2007 Settlement is the same, such that the 2006 Covenant was expressly merged into the 2007 Settlement.

In comparing the subject matter of contracts, Illinois courts have cautioned against defining subject matter too broadly or too narrowly.  For example, in *Ill. Concrete-I.C.I., Inc. v. Storefitters, Inc.*, the court rejected the broad view that two contracts had the same subject matter simply because both involved "using trucks."  922 N.E.2d 542, 546 (Ill. App. Ct. 2010).  On the other hand, in *Midwest Builder Distrib., Inc. v. Lord & Essex, Inc.*, the court rejected an "extremely narrow view" of two contracts as having subject matter limited to "the specifications of the products to be delivered."  891 N.E.2d 1, 20 (Ill. App. Ct. 2007).

Molon argues that the subject matter of both agreements in this case is the right to practice the '915 patent. *See* Appellant's Br. 18 ("Both the 2006 Covenant Not to Sue and the 2007 Settlement Agreement operate as licenses to the '915 Patent.").  Molon asserts that a "patentee can only divest [it]self of one thing, the right to exclude," and therefore that right to exclude must be the subject matter of both agreements.  *See* Appellant's Br. 14 (citing *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, (Fed. Cir. 2003)).  According to Molon, the 2007 Settlement "stands in direct contrast" to the 2006 Covenant with respect to the right to exclude under the '915 patent, which indicates that the 2007 Settlement was intended to replace the 2006 Covenant.  *See* Appellant's Br. 16.

Nidec responds that the mere fact that two agreements cover rights under the same patent does not necessarily mean they concern the same subject matter. Appellee's Br. 13. Nidec relies on the district court's analysis of the different rights granted under each agreement as defining the subject matter. *Id.* For example, Nidec argues that the district court properly compared the subject matter of the two agreements by considering the differences between the types of license, the number of patents, and the products included in each agreement. *Id.*

We agree with Nidec and the district court that it is incorrect to define the subject matter of both agreements as the right to practice the '915 patent. Rather, to determine the subject matter of each agreement, we must examine the actual language of the agreements themselves. We must consider how the language of each agreement conveys the substantive rights and obligations exchanged between the parties.

First, we look at the subject matter of the 2006 Covenant, which is a one-paragraph unilateral covenant not to sue on two patents—the '915 patent and the '726 patent. J.A. 27. The 2006 Covenant covers "any and all products previously or presently made, used or sold by Merkle-Korff" and it extends geographically to "the United States." *Id.* It contains no restrictions on the market for sales of licensed products.

Next, we look at the subject matter of the 2007 Settlement, which is an eight-page bilateral contract, in which Merkle-Korff agreed to pay monetary consideration to Molon in exchange for an exclusive license covering more than a dozen United States and foreign patents and patent applications. J.A. 30–37. The 2007 Settlement is not limited to any specific products or geographical area, but it is limited to the Kinetek Exclusive Market. J.A. 31. Additionally, the 2007 Settlement gives Merkle-Korff a right to sue third parties for infringement of the licensed patents

within the Kinetek Exclusive Market[2] in the event that Molon declines to do so.

A covenant not to sue is equivalent to a nonexclusive or "bare" license, *see Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032 (Fed. Cir. 1995), which is a promise by the patent owner not to sue the licensee for practicing the patented invention, and under which the patent owner impliedly reserves the right to grant similar nonexclusive licenses to other entities. *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001). In contrast, an exclusive license is a license to practice the patented invention "accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave." *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998) (quoting *Western Elec. Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 118 (2d Cir. 1930)). We have characterized an exclusive licensee as "shar[ing] the property rights represented by a patent." *Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1553 (Fed. Cir. 1995) (quoting *Weiner v. Rollform*, 744 F.2d 797, 807 (Fed. Cir. 1984)).

There are fundamental differences between an exclusive license and a nonexclusive license, particularly in the context of standing to assert a claim for patent infringement. *See Rite-Hite*, 56 F.3d at 1552 (citing *Independent*

---

[2]   The district court noted a hypothetical "strange result" regarding Merkle-Korff's right to sue for infringement of the '915 patent. J.A. 10. We see nothing "strange" about a market-limited exclusive licensee being both empowered to sue for infringement within the licensed market and also subject to being sued by the licensor for infringement outside of that market. *See* J.A. 10. Because the observation was not determinative of the district court's decision, however, any error in the court's reasoning was harmless.

*Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468–69 (1926)). In essence, an exclusive licensee has an interest in the patent sufficient to establish an injury when a third party infringes, akin to an ownership interest, while a non-exclusive licensee has no such interest in the patent and merely enjoys freedom from suit. *See id.* Under this framework, it cannot be said that an exclusive license and a non-exclusive license necessarily concern the same subject matter, even though both licenses include the same patent.

We thus find that there are important substantive differences between the subject matter of the 2006 Covenant and the 2007 Settlement. The 2006 Covenant is a unilateral promise by Molon not to sue Merkle-Korff (or its successor, Nidec) for infringement of two patents, one of which is the '915 patent. The 2007 Settlement, in contrast, is a bilateral contract through which Molon transferred to Merkle-Korff a share in the existing and potential exclusionary rights under more than a dozen listed patents and applications, one of which is the '915 patent. Moreover, the 2006 Covenant is limited to products existing at the time of its execution, while the 2007 Settlement includes both existing and future products. And the 2006 Covenant is not limited to any specific market, while the 2007 Settlement is limited to the Kinetek Exclusive Market.

Molon criticizes the district court for allegedly requiring perfect congruity between the contracts. Appellant's Br. 19. But the district court properly considered the substantive differences between the agreements. Like the district court, we reject Molon's argument that we should disregard those differences and instead focus entirely on the fact that the '915 patent appears in both agreements. And we find no legal support for the sweeping proposition that an overlapping patent is sufficient to render two agreements the same subject matter.

Based on the substantial differences between the agreements, we conclude that the 2006 Covenant is not

"concerning the subject matter" of the 2007 Settlement. We therefore conclude that the language of the merger clause in the 2007 Settlement did not expressly extinguish the 2006 Covenant.

## II

Having concluded that the 2007 Settlement did not expressly extinguish the 2006 Covenant, we next consider Molon's more general suggestion that the existence of the merger clause is itself evidence that the parties intended the 2007 Settlement to extinguish the 2006 Covenant. To address that argument, we look at the merger clause in the context of the overall 2007 Settlement. *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) ("The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself.").

"Merger occurs when a contract supersedes and incorporates all or part of an earlier agreement." *Am. Nat. Bank & Trust Co. of Chicago v. Bentley*, 512 N.E.2d 12, 13 (Ill. App. Ct. 1987). However, the scope of merger "does not extend infinitely to any and all dealings that might have occurred between the parties." *Midwest Builder*, 891 N.E.2d at 19.

Molon argues that, by including a merger clause in the 2007 Settlement, the parties manifested their intent to have the 2007 Settlement override all other agreements pertaining to rights under the '915 patent. Appellant's Br. 10–13. According to Molon, the 2007 Settlement "spells out Merkle-Korff's complete rights with respect to the '915 patent," and those rights stand "in direct contrast" to the rights granted under the 2006 Covenant. Appellant's Br. 16. Molon contends that, because Merkle-Korff already had a right to practice the '915 patent under the 2006 Covenant, under the district court's reading, "the grants and carve-outs associated with the '915 Patent . . . in the 2007 Settlement Agreement are superfluous at best." *Id.* And

Molon further argues that, to the extent the merger clause did not apply to the 2006 Covenant, the merger clause itself would have been superfluous because there were no other agreements between the parties. Appellant's Br. 17–18.

Nidec responds that, whereas merger clauses are intended to integrate negotiations into the final written contract, they do not merge separate agreements that were not part of the negotiations. Appellee's Br. 16 (citing *Air Safety*, 706 N.E.2d at 885–86). Thus, Nidec argues, the merger clause here is not superfluous because it merged the negotiations that led to the 2007 Settlement, but it did not merge the 2006 Covenant, which is a "wholly separate commitment by Molon relating to only two patents." Appellee's Br. 17.

We agree with Nidec that the 2006 Covenant is a separate agreement that was not merged with the 2007 Settlement. It is telling that Molon's appeal relies on a clause that both parties repeatedly refer to as a "merger" or "integration" clause. Yet, neither party has invoked the merger doctrine in its traditional form as a doctrine of contract interpretation. *See Schweickhardt v. Chessen*, 161 N.E. 118, 122 (Ill. 1928) ("The rule is, that when parties reduce their agreement to writing, all prior negotiations leading up to the execution of the contract are merged therein, and parol evidence is not admissible to explain, contradict, enlarge, or modify the writing as it existed when executed."). The effect of the merger doctrine is to "preclude[] evidence of understandings, not reflected in a writing, reached before or at the time of its execution which would vary or modify its terms." *J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 642 N.E.2d 1215, 1217 (Ill. 1994); *see also Fuchs & Lang Mfg. Co. v. R.J. Kittredge & Co.*, 146 Ill. App. 350, 364 (Ill. App. Ct. 1909) ("It follows legally that this [written contract] merged all prior negotiations, letters and telegrams in the written agreement thus formulated and signed; and all extrinsic evidence of oral or written negotiations became incompetent, immaterial and irrelevant for the

purpose of contradicting or modifying the written agreement."). But here, neither Nidec nor Molon has argued that the 2006 Covenant was part of the negotiations for the 2007 Settlement and is thus relevant to interpret that later agreement. On the contrary, Nidec's position is that the 2006 Covenant is an entirely separate agreement unrelated to the 2007 Settlement, and Molon's position is that the 2006 Covenant should be considered extinguished. These positions reflect the parties' apparent concession that the 2006 Covenant was a separate agreement from the 2007 Settlement, and therefore outside the scope of what a merger clause is intended to cover.

We also disagree with Molon that the terms of the 2007 Settlement are in conflict with, or are rendered superfluous by, the 2006 Covenant. Under Illinois law, the doctrine of merger only applies when a later contract "relates to the same subject matter and embraces the same terms" as an earlier contract. *Kraft v. No. 2 Galesburg Crown Fin. Corp.*, 420 N.E.2d 865, 870 (Ill. App. Ct. 1981).

The 2007 Settlement contains different terms that granted additional separate rights under the '915 patent beyond the rights that Merkle-Korff already had under the 2006 Covenant. Specifically, Merkle-Korff previously had a right to practice the '915 patent only with respect to existing products but then acquired the additional right to practice that patent for all products. Merkle-Korff previously had a nonexclusive right to practice the '915 patent and was then given exclusivity, i.e., meaning that Molon could not grant rights to any other third party to practice the patent within the Kinetek Exclusive Market. And Merkle-Korff also acquired the right to sue to enforce that exclusivity within the Kinetek Exclusive Market. Those additional rights do not conflict with the rights granted in the 2006 Covenant, nor are they superfluous.

Molon argues that the 2007 Settlement "provided no authorization beyond the 'Kinetek Exclusive Market.'"

Appellant's Br. 15–16. To support that position, Molon points to language in the 2007 Settlement that merely clarifies that a sale to a "receiving Merkle-Korff Affiliate" would not immunize otherwise-infringing activity outside the Kinetek Exclusive Market. *Id.* (citing J.A. 31). That portion of the agreement, however, does not indicate that Merkle-Korff intended to forfeit the separate rights that it had already been granted to practice the '915 patent outside the Kinetek Exclusive Market. In reality, the 2007 Settlement is silent with respect to Merkle-Korff's pre-existing rights under the 2006 Covenant to practice the patent nonexclusively in all other markets. Although Molon urges us to interpret that silence as an indication that the parties intended to replace those pre-existing rights with the rights granted in the 2007 Settlement, the law supports Nidec's position that the two agreements are separate agreements that did not merge.

Molon relies heavily on *Midwest Builder*, a case in which the court found that the payment obligations from one party to another were the central component of two agreements, and therefore the parties intended a merger clause to override conflicting provisions regarding those obligations. *Midwest Builder*, 891 N.E.2d at 19–20. But here, while the right to practice the '915 patent is common to both the 2006 Covenant and the 2007 Settlement, the two agreements do not conflict with each other regarding that right, and there are numerous additional rights granted in the 2007 Settlement.

Nidec correctly points out that the 2006 Covenant states that it applies "forever," and Molon explicitly stated its intention for the 2006 Covenant to divest the court of jurisdiction over claims involving the '915 patent in the '5134 litigation. To achieve that purpose, it was essential that the 2006 Covenant is irrevocable. *See ArcelorMittal v. AK Steel Corp.*, 856 F.3d 1365, 1370 (Fed. Cir. 2017). Although Molon argues that the 2006 Covenant was only irrevocable unilaterally by Molon, we agree with the district

court that the absence of any reference to the 2006 Covenant in the 2007 Settlement, though not dispositive, is an indication that Nidec did not intend to assent to its revocation. *See* J.A. 11–12.

For these reasons, we find that the merger clause in the 2007 Settlement does not indicate that the parties intended to revoke the 2006 Covenant. The 2006 Covenant remains operable, and it bars Molon's suit against Nidec for infringement of the '915 patent.

## III

Lastly, we turn to Nidec's motion to strike portions of Molon's reply brief. Nidec argues that Molon's reply brief raises two new arguments for denial of summary judgment that were not raised before the district court: (1) that the 2006 Covenant did not transfer from Merkle-Korff to Nidec; and (2) that the 2006 Covenant does not cover some of the accused products. Molon responds that those factual assertions are intended only to support its position that the 2006 Covenant was not broad, which is a central issue raised in this appeal. We limit our consideration of the allegedly new arguments solely to the purpose for which Molon raises them, and we find that neither compels a finding that the subject matter of the 2006 Covenant and the 2007 Settlement is the same. Accordingly, Nidec's motion is denied as moot.

## CONCLUSION

We have considered Molon's remaining arguments, but we find them to be unpersuasive. Accordingly, the judgment of the district court is affirmed. Nidec's motion to strike portions of the reply brief is denied as moot.

## **AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

_____

**MOLON MOTOR AND COIL CORPORATION,**
*Plaintiff-Appellant*

**v.**

**NIDEC MOTOR CORPORATION,**
*Defendant-Appellee*

_____

2019-1071
_____

Appeal from the United States District Court for the Northern District of Illinois in No. 1:16-cv-03545, Judge Edmond E. Chang.

_____

REYNA, *Circuit Judge*, dissenting.

Resolution of this case should have been straightforward. In the 2006 Covenant, Molon granted Merkle-Korff a bare license to practice the '915 patent in any market. In the 2007 Settlement, Molon granted Merkle-Korff an exclusive license to practice the '915 patent in the Kinetek Exclusive Market only. Both licenses relate to the same subject matter—the right to practice the '915 patent. Thus, the 2007 Settlement's merger clause, which wiped away all prior covenants with the same subject matter, wiped away the 2006 Covenant. The majority's holding—that Merkle-Korff's successor, Nidec, can practice the '915 patent outside of the Kinetek Exclusive Market, despite the 2007 Settlement's clear prohibition of such practice—rewrites the

terms of the 2007 Settlement and gives Nidec a windfall. Rewriting the key terms of an otherwise clear agreement is not the role of this court.  For these reasons and those discussed below, I respectfully dissent.

## I.  "Subject Matter"

The majority recognizes that the "right to practice the '915 patent" is common to the 2006 Covenant and the 2007 Settlement.  Maj. Op. at 14.  The majority, however, concludes that the two agreements do not have sufficiently related subject matter because they have "fundamental differences," mainly, Merkle-Korff's additional right to sue as an exclusive licensee under the 2007 Settlement.  *Id.* at 10.  I disagree. Under Illinois law, which applies here, the common right to practice the '915 patent is sufficiently related subject matter.

In *Midwest Builder Distrib., Inc. v. Lord & Essex, Inc.*, a case cited by the majority, an Illinois court determined that merger occurred between an earlier credit information sheet and later subcontractor agreements because they had sufficiently related subject matter.  891 N.E.2d 1, 20 (Ill. App. Ct. 2007).  The earlier credit information sheet provided that Midwest Builder Distribution ("Midwest"), a cabinets and appliances company, would supply its goods on credit to Lord & Essex, a home construction company. *Id.* at 7.  Later subcontractor agreements more narrowly provided that Midwest would sell goods to Lord & Essex for homes in five subdivisions.  *Id.*  The court rejected Midwest's overly narrow view that the subcontractor agreements' subject matter was "focused exclusively on the specifications of the products to be delivered."  *Id.* at 20. The court instead found "the heart of the subject matter" to be broader—the "payment obligations" of Lord & Essex to Midwest.  *Id.*  The court also noted that the earlier credit information sheet had the same subject matter, and, thus, the later subcontractor agreements "preempted and superseded" the credit information sheet's conflicting payment

obligations.  *Id*.  Here, the "heart of the subject matter" of the 2007 Settlement and the 2006 Covenant is the right to practice the '915 patent.  Thus, like in *Midwest Builder*, the two agreements merge.

Contrary to *Midwest Builder*, the majority applies an unduly heightened standard for merger.  Although claiming it is not dispositive, the majority notes that the absence of any reference to the 2006 Covenant in the 2007 Settlement "is an indication that Nidec did not intend to assent to its revocation." Maj. Op. at 16.  There is no legal requirement that a party explicitly list prior agreements in a merger clause.  Indeed, as the district court here noted, "[p]arties may have numerous outstanding contracts, even in a relatively simple operation," hence, requiring the contracting parties to mention prior agreements in a merger clause should "not be taken too far." J.A. 11.  Yet, the majority goes too far by implying that the 2007 Settlement should have explicitly referenced the 2006 Covenant.

The majority also mistakenly believes that there was no merger because the parties failed to note that both agreements were part of the same negotiations.  Maj. Op. at 14.  The merger doctrine, however, turns on whether two separate agreements have related subject matter, not whether they are part of the same negotiations. *Midwest Builder*, 891 N.E.2d at 20 ("To determine the scope of integration of the subcontractor agreements, we must . . . determine the intended subject matter of the contracts.").  In addition, the majority's narrow view of the merger doctrine conflicts with the plain terms of the agreement, which provides that merger encompasses prior negotiations as well as prior "agreements, representations and covenants concerning the subject matter hereof." J.A. 35.

The majority conflates the merger doctrine with the related but distinct parol evidence rule.  As the majority correctly notes, once merger has occurred, the "effect" of the merger "is to 'preclude[] evidence of understandings, not

reflected in a writing, reached before or at the time of its execution which would vary or modify [the integrated agreement's] terms.'" Maj. Op. at 13 (quoting *J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 642 N.E.2d 1215, 1217 (Ill. 1994)). Yet, this "effect," commonly referred to as the parol evidence rule, is irrelevant in this appeal. *See J & B Steel Contractors, Inc.*, 642 N.E.2d at 1217 (noting that the "parol evidence rule" is the "rule [that] generally precludes evidence of understandings, not reflected in a writing"); Restatement (Second) of Contracts § 213 cmt. A (1981) (noting that the parol evidence rule is not "a rule of interpretation," but instead "defines the subject matter of interpretation").[1] Here, no party disputes that the 2007 Settlement merged with all prior dealings with related subject matter, and, thus, parol evidence will not be admissible at trial. Instead, the parties disagree as to the scope of the subject matter of the 2007 Settlement.

## II. Contract Interpretation

The majority also misinterprets the language of the 2007 Settlement in three other instances, skewing its subject matter analysis.

First, the majority states that the 2007 Settlement and the 2006 Covenant did not conflict because the 2007 Settlement is silent with respect to Merkle-Korff's pre-existing rights to practice the '915 patent under the 2006 Covenant. Maj. Op. at 15. But the two agreements do conflict. The 2007 Settlement provides limited authorization to practice the patent in one market. The 2007 Settlement states that:

---

[1]   "In Illinois, the Restatement of Contracts forms the basis for the state's contract law . . . ." *In re Krueger*, 192 F.3d 733, 741 (7th Cir. 1999).

> Under said license, the sale, offer to sell, lease, importation, exportation, commercialization and/or transfer of products and/or systems between two Merkle-Korff Affiliates . . . shall in no way permit the transferee Merkle-Korff Affiliate . . . to make, have, made, use, sell, offer to sell, lease, import, export or otherwise commercialize such products and/or systems for resale or other transfer to any person or entity outside of the Kinetek Exclusive Market.

J.A. 31. As the district court noted, this clause "denied Merkle-Korff any further rights in the '915 patent" beyond the right to practice in the Kinetek Exclusive Market. J.A. 4. Contrastingly, the 2006 Covenant provides broad authorization to practice in all markets.

The conflict between the two agreements is key. An integrated agreement "supersedes inconsistent terms of prior agreements." Restatement (Second) of Contract § 213 cmt. b (1981). Thus, because the 2007 Settlement is integrated, it superseded the broad and conflicting authorization to practice the '915 patent granted in the 2006 Covenant.

Second, the majority argues that there is no merger because the 2007 Settlement contains "different terms" than the 2006 Covenant. Maj. Op. at 14. Yet, under the plain language of the 2007 Settlement, "different terms" do not prevent merger. As displayed below, under clause 1 of the 2007 Settlement, the contract makes a distinction between "terms or subject matter," indicating that these two concepts are distinct. Under clause 2, the 2007 Settlement states that merger will occur for all prior dealings concerning the same subject matter, not the same terms.

> [1] There are no representations, promises, or agreements pertaining to the *terms or subject matter* of this Agreement, whether express or implied, that are not set forth in this Agreement. [2] All

> prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations and covenants concerning the *subject matter* hereof, are merged herein and shall be of no force or effect.

J.A. 35 (emphasis and numbering added).  Hence, pursuant to the 2007 Settlement, "subject matter" triggers merger, a broader and separate concept than contractual terms.

Lastly, the majority reads out the term "covenants" from the 2007 Settlement, rendering that portion of the merger clause superfluous.  A court must read "[e]very contract . . . as a whole," and "favor a construction" that does not render superfluous a portion of the contract. *Leavitt v. Kostel*, 177 N.E.2d 882, 885 (Ill. App. Ct. 1961).  The 2007 Settlement states that all "covenants concerning the subject matter hereof, are merged herein and shall be of no further force or effect."  J.A. 35.  The parties do not dispute that there were no other covenants between them besides the 2006 Covenant when the parties entered into the 2007 Settlement.  As a result, the term "covenants" presumably refers to the 2006 Covenant.

In sum, because the majority misapplies Illinois law and misinterprets the 2007 Settlement, I dissent.